In the Matter of the Final Accounting of GUARANTY TRUST COMPANY OF NEW YORK, as Trustee of a Trust Made by JOSEPH P. DAY, Respondent. ANINA DEZENG DAY et al., Appellants.

First Department, March 29, 1960.

*Hampton D. Ewing, Jr.,* of counsel (*Catherine Noyes Lee* with him on the brief; *Cadwalder, Wickersham & Taft,* attorneys), for Pauline P. French and others, appellants.

*William Victor Goldberg,* guardian ad litem for Anina deZeng Day, appellant.

*Wallace B. Liverance, Jr.,* of counsel (*Coleman Burke* with him on the brief; *Burke & Burke,* attorneys), for Coleman Burke, guardian ad litem for Snowden T. Day, appellant.

*Paul R. Hays,* guardian ad litem for Estella P. Day and others, appellants.

*White & Case* for respondent.

M. M. FRANK, J. This is an appeal from a Special Term order in a proceeding (Civ. Prac. Act, art. 79) for the judicial settlement of the account of the trustee under a trust indenture, and from the court's determination in the construction proceeding.

The donor, Joseph P. Day, was a nationally known, astute real estate operator and auctioneer, who was represented by competent counsel when, in 1942, he created the trust with which we are concerned. It is a fair assumption that the trust agreement, naming the Guaranty Trust Company of New York as trustee, was discussed by the donor not only with his counsel but with the trustee he selected, in order to effectuate the purpose he intended.

Under the essential terms of the trust indenture, Louise Young Day, wife of the donor, was to receive the income of the fund during her lifetime. With respect to the distribution

of the fund, the provision reads: "Upon the death of the said Louise Young Day this trust shall terminate and the principal of the trust fund shall be assigned, transferred and paid over to such of the issue of the children of the Donor as shall be living at the termination of the trust, said issue to take per stirpes, and if there be no such issue, then to THE FIRST CHURCH OF CHRIST, SCIENTIST, IN BOSTON, MASSACHUSETTS."

Joseph P. Day, the donor, died on April 10, 1944, and his wife, the life beneficiary, died on January 15, 1956. The donor had six children, of whom four survived the mother and are living, and two, Charles P. Day and Laura Day Barrett, are deceased, leaving children surviving them. At the time of the death of Louise Young Day there were 16 living grandchildren of the blood of the donor, and, in addition, David Leavitt Henry Day, adopted by Joseph P. Day, Jr., on December 3, 1934, before the death of the donor, and Anina deZeng Day, adopted by Fairfield P. Day on April 15, 1951, after the death of the donor.

Two questions require determination and they may be briefly summarized as follows: First, shall the remainder of the trust estate be divided equally among the grandchildren of the donor, or allocated to them per stirpes, with their respective parents as heads of the stock? Second, are the adopted children of the donor's children entitled to share in the trust estate as issue of the children of the donor?

If the fund is distributable in equal shares to the grandchildren it will be divided into 16, 17 or 18 equal portions, depending upon whether, if at all, either or both of the adopted children are to be included. If it is distributable stirpitally with the children as the heads of the stock, the fund will be divided into six equal parts, one for each of the donor's six children, and each will be further divided in equal portions among the respective children of the donor's six children.

The learned Justice at Special Term held that the grandchildren rather than the children of the donor were intended to be the heads of each stock for the purposes of the stirpital division of the principal to the surviving issue of the donor's children. A cardinal principle of construction is that the intention of the settlor is to be sought in all his words, and when ascertained is to prevail unless contrary to public policy or an established rule of law. (See *Matter of Buechner,* 226 N. Y. 440, 444; *Robinson* v. *Martin,* 200 N. Y. 159, 164; *Mullarky* v. *Sullivan,* 136 N. Y. 227, 230–232.)

The meaning of the words employed by the donor is not to be decided *in vacuo* but is to be found by considering the entire instrument and the background of facts and circumstances

existing when the indenture was executed. (*Matter of Upjohn,* 304 N. Y. 366, 375.)

We may not disregard the donor's use of the phrase "shall be assigned, transferred and paid over to such of the issue of the *children* of the Donor as shall be living at the termination of the trust, said issue to take per stirpes". (Italics supplied.) Had the donor intended that his grandchildren were to take per capita in equal shares, as held at Special Term, or that the fund be paid over to his grandchildren equally and the issue of his grandchildren per stirpes, there would have been no need for the reference to his children. Had he intended that the grandchildren be the heads of the stock and take as such, it necessarily follows that grandchildren rather than children would have been the appropriate word, followed by such words as, "and their issue per stirpes." He did not so express himself and we may neither insert that which does not appear in the document, nor make substitutions. (See *Matter of Roth,* 291 N. Y. 1, 6; *Matter of Watson,* 262 N. Y. 284, 293.)

Per stirpes literally means "by roots or stocks" or "by representation." (Black's Law Dictionary [4th ed.].) There is significance to the phrase used by the donor when he wrote "said issue to *take* per stirpes" (italics supplied) for by it he indicated the manner of taking rather than the distribution after it was received. To state it another way, the settlor was emphasizing the method of distribution to or receipt by descendants rather than equality of distribution among them. There is a complete absence of terms such as "equally" or "in equal shares," to indicate that he had in mind equality of division among his grandchildren. Having identified the remaindermen by their immediate ancestors, his children, the conclusion is warranted that the donor intended that the parent in each instance was to be the commencement of the stirpital division. It necessarily follows that a per capita division among grandchildren does not give true meaning to the phrase "said issue to *take* per stirpes". If the donor had intended distribution of the fund per capita among his grandchildren, the phrase would have been surplusage. A good draftsman would have been aware of it, and, as stated, the donor employed competent counsel. Finding it in the text, we should not ignore it but must give it meaning. Conversely, if we construe the intent of the donor to have been the division of the trust remainder into segments corresponding with the number of his children so that the issue collectively of each would jointly receive as a family unit a share equal to that of each of his other children, we give full effect to the stirpital direction. It is also significant

that the gift here is to a single class embraced in the phrase, " issue of the children of the Donor ". It is a fair conclusion, therefore, that the settlor was thinking in terms of his six children and intended to create six equal shares with distribution of each share per stirpes.

In view of the language of the trust indenture under consideration here, we do not think that *Matter of Foster* (144 Misc. 622, mod. 242 App. Div. 796, affd. 270 N. Y. 624), upon which the learned Justice at Special Term placed reliance, should be applied. Certainly it is not controlling or persuasive as to the meaning of the words " said issue to take per stirpes ".

In construction problems, which apply to trust indentures as in wills, we have been told that " Precedents and rules, frequently, have but slight value in interpreting wills; for those instruments are rarely, and, in the nature of things, are not likely to be, similar in terms," and that " we can, and we should, give that construction to a will, which has ' in its favor the balance of reasons and probabilities.' " (*Robinson* v. *Martin*, 200 N. Y. 159, 164.) As is more pungently stated in *Matter of Delafield* (142 Misc. 536, 541), " no will has a twin brother," for there is probably no branch of the law upon which precedents are of less value than in questions involving testamentary or trust agreement construction, since " [s]light variations of phrase * * * or differences in arrangement may lead us to opposite results." (See *Matter of Bump*, 234 N. Y. 60, 63.)

We must conclude that the donor intended that his children rather than his grandchildren should be considered as the stirpital heads and that upon termination of the trust the fund was to be divided in six equal parts, and each part distributed pro rata among the issue of each child rather than in equal shares to all his grandchildren.

We now turn to the question as to whether the adopted children are to share with the natural children of Fairfield P. Day and Joseph P. Day, Jr., respectively. David Leavitt Henry Day was adopted almost 10 years before the death of the donor and 8 years before the trust indenture was drawn. The settlor was fully aware of his existence and status when he created the trust and executed the instrument. David Leavitt Henry Day must be included among the issue of the donor's children. (*Matter of Upjohn*, 304 N. Y. 366, 375, *supra*.) The court at Special Term reached the same conclusion, and in that respect we affirm the order.

The problem as it concerns Anina deZeng Day is somewhat different and more troublesome. She was not adopted until

seven years after the death of the donor. Relying principally on *New York Life Ins. & Trust Co.* v. *Viele* (161 N. Y. 11), the learned Justice at Special Term held that she was to be excluded as a remainderman in the one-sixth share allocated to the children of Fairfield P. Day, her adoptive parent. With that conclusion we cannot agree. It is true that *Viele* stands for the proposition that " lawful issue " will be construed to designate only those descended through the blood if " there is nothing to the contrary to be found in the context of the instrument or in extraneous facts proper to be considered " (p. 20). In that connection the comment on *Viele* made by Judge FULD in *Matter of Upjohn* (304 N. Y. 366, 375, *supra*) is quite cogent. He said, " That, though, is a rule of construction and nothing more. Where the testator's design to include an adopted child is clear, the limitation will be construed to effectuate that intention." Moreover, in *Viele* the court, in concluding as it did, said (p. 21) : " A construction of the will should not be favored that would impute to the testatrix an intention apparently so unjust and improbable."

It is our public policy to extend to an adoptive parent and his foster child the legal relationship of parent and child, including the rights of inheritance (Domestic Relations Law, § 115), and our courts have held that adopted children are lineal descendants of their foster parents by command of the statute (see *Matter of Cook,* 187 N. Y. 253, 261). Nor does the section when it refers to an adopted child defeating the rights of remaindermen, act as an absolute bar, for it will not operate against the intention of the donor (*Matter of Ward,* 9 A D 2d 950).

As in *Upjohn,* the settlor here was fully aware of the adoption of David Leavitt Henry Day, and, as stated, we agree with Special Term that he is to be included. Implicit therein, is the conclusion that the donor was in complete accord with the idea that no distinction should be made between his natural and adopted descendants. With full knowledge that he had an adopted grandchild, he drew no distinction in the trust agreement between that one and his natural grandchildren. For the courts to do so, in the absence of any explicit direction in the indenture and in the face of all the surrounding circumstances, would be contrary to the public policy of the State, bring about an unconscionable result, and lay the foundation for different treatment of persons within the same stirpital division.

Accordingly, the order should be modified to provide for the division of the trust fund into six equal parts, and for the distribution of each part equally to the children of each of the donor's six sons and daughters, to include David Leavitt Henry

Day and Anina deZeng Day among the children of their respective adoptive parents. The order should otherwise be affirmed, with costs to all parties filing briefs.

Settle order on notice.

RABIN, J. P., McNALLY, STEVENS and BASTOW, JJ., concur.

Order unanimously modified to provide for the division of the trust fund into six equal parts, and for the distribution of each part equally to the children of each of the donor's six sons and daughters, to include David Leavitt Henry Day and Anina deZeng Day among the children of their respective adoptive parents, and, as so modified, affirmed, with costs to all parties appearing and filing briefs.

Settle order on notice.