Dye, J.
In this appeal by permission of the Appellate Division, First Department, on a certified question, we are concerned only with a problem of pleading. The main proceeding involves a controversy as to whom the principal of an inter vivos trust created by John D. Rockefeller under date of July 3,1917 should be distributed, he having provided that in the event the principal of the fund should be divided into shares, as was in fact done, viz.:
“ Section VI. * * *
‘ ‘ In case at the death of any beneficiary any portion of the principal of his share shall then remain in the hands of the Trustee, such portion shall upon the death of such beneficiary be paid to his issue [italics supplied], if any, per stirpes and not per capita, and if there shall be no such issue [italics supplied] of such beneficiary so dying, then and in that event such portion shall be disposed of as provided for in Section XI. of this instrument.”
The share of the trust which fell to the settlor’s granddaughter, Muriel McCormick Hubbard, has fallen in by reason of her death in 1959.
The successor trustee, the Chase Manhattan Bank, commenced this proceeding under article 79 of the Civil Practice Act for an order finally settling and allowing its accounts and directing that the principal of the trust be distributed to Bennett College, Millbrook, New York, the Church of the Holy Trinity, Middle-town, Connecticut, and to the Visiting Nurse Association of Chicago, Illinois, in the amount of $100,000 each and the remaining balance of the principal of the trust to Lincoln Center for the Performing Arts, Inc., of New York City. The petition recited that such distribution was in accordance with the direc.tion of the succeeding members of the committee appointed by section XI to the charities named, for the reason that the children adopted by Mrs. Hubbard, the life beneficiary, were not1 ‘ issue ’ ’ entitled to take within the meaning of the term as used in section VI of the deed of trust and that, accordingly, the principal of the trust should be distributed as provided in section XI thereof.
According to the petition and stipulation of facts, it appears that John D. Rockefeller, by the deed of trust dated July 3,1917, set aside and transferred certain securities to the trustee to be *130 held in trust for the life benefit of his daughter, Edith Rockefeller McCormick, subject however to the charge of an annuity in the amount of $30,000 payable to her husband, Harold F. McCormick during his lifetime. Upon the death of his daughter Edith, the trustee was to pay over to the principal of the trust, subject to the charge of the annuity for her husband, to such of her issue or to such charities as she might appoint by will or in default of appointment, to divide the fund into equal trusts for the benefit of her surviving children. Edith died August 25, 1932, without having exercised her power of appointment. She was survived by her husband and three children, one of whom was Muriel McCormick Hubbard, who became entitled to a secondary life interest in one of the equal shares into which the trust fund was then divided.
Muriel McCormick, the grantor’s granddaughter, was born in 1902. She married Elisha Dyer Hubbard September 10, 1931. He died December 26,1936. There was no issue of the marriage. Mrs. Hubbard never remarried. All of these happenings occurred in the lifetime of the grantor. He died May 23, 1937.
Thereafter, Mrs. Hubbard, during her widowed lifetime, by decree of the Probate Court of Connecticut entered in 1939, adopted two infants. Subsequently these adoptions were set aside and the same two children were readopted pursuant to court order by a Mr. and Mrs. Charles Hardin of Evanston, Illinois. The interests of these two children, if any, are not presently involved in this appeal.
Subsequently, and in 1954, by orders of a California court, Mrs. Hubbard, then aged 52 years, adopted two infants of tender age born in 1953, whom she named Harold Fowler McCormick Hubbard and John Rockefeller McCormick Hubbard respectively. These same two children were later readopted by her pursuant to the laws of Nevada by a decree dated May 14, 1958. Also, by an order of a Nevada court dated March 5, 1957, Mrs. Hubbard adopted a third child born in 1955, whom she named Elisha Dyer Hubbard, Jr. By a decree of the same Nevada court dated December 31, 1958, she adopted a fourth child born in 1958, whom she named Anna Jones Dyer Hubbard.
Mrs. Hubbard died in 1959, due to an incurable malignancy from which she allegedly was suffering at and prior to the time of the four adoptions just mentioned. She left a will dated *131 August 26, 1955 which has been admitted to probate in Connecticut. By this will, Mrs. Hubbard noted the existence of her share of the principal of the trust established by her grandfather and expressed the hope and desire “ that upon my death the principal of my share that is in the hands of the Trustee will be paid to my children whom I shall have lawfully adopted as my issue within the contemplation of said trust indenture.”
The Connecticut executors of the last will and testament of Mrs. Hubbard, the testamentary guardian, the ancillary guardian in the State of New York and the guardian ad litem of her four adopted infant children have appeared herein and have filed answers praying for an order settling and allowing the trustee’s accounts and further directing that the principal of the trust and accumulated income be distributed to the ancillary guardian in the State of New York and for such other relief as is in accordance with the respective interests.
The charities and the Attorney-General of the State of New York, in behalf of the ultimate and indefinite charitable beneficiaries, have filed answers and amended answers, taking the position that Mrs. Hubbard’s adopted children are not issue entitled to take the principal within the meaning of the trust instrument and that the settlor did not intend the principal of the trust should be paid to adopted children as issue. The Attorney-General’s amended answer denies the validity of each and every one of the adoptions, allegedly because, at the time of the adoptions, Mrs. Hubbard had fraudulently concealed and wrongfully withheld from the adoption courts facts and information which would have revealed her unfitness as a foster parent and that, by reason of such fraudulent concealment and withholding, the adoption decrees were wholly void and not entitled to faith and credit in this matter in New York. He also pleaded as a defense, viz.: “ sixth: Upon information and belief, that the purpose of each and every one of the purported adoptions was to defeat the charitable remainder, in violation of section 115 [now numbered 117] of the Domestic Relations Law of this State.”
For convenience, the several amended answers have been consolidated and, since the appearance of the Attorney-General is actually in behalf of all charities, the answering charities are deemed to have also pleaded the matter contained in the Attor *132 ney-General’s amended answer. In the cross motions addressed to the sufficiency of the several pleadings and the orders made striking allegations attacking the validity of the adoptions and alleged fraudulent motivation and for leave to amend, only so much of the order of the Appellate Division is now before us as reverses an order of the Special Term and grants leave to respondents to amend the several amended answers by adding thereto the following:
“ 6. Further answering pars. 16 and 20 of the Petition allege that the adoptions referred to therein were obtained by Muriel McCormick Hubbard for the purpose and with the intent of defeating the interests of the charitable remaindermen to be selected by the Committee in accordance with the Deed of Trust dated July 3, 1917, which interests were contingent upon the death of Muriel McCormick Hubbard without issue; and further alleges
‘1 A. That said adoptions cannot therefore be effective in this proceeding to defeat the rights of said charitable remaindermen and thereby frustrate the intent of the grantor of said Trust dated July 3,1917.
“ B. That said adoptions cannot therefore be effective in this proceeding to defeat the rights of respondent as a remainder-man under said Trust dated July 3,1917 by reason of the law and policy of the State of New York including Domestic Relations Law § 117 and subd. 4 thereof.”
Preliminarily, it should be stated that we are not presently concerned with the underlying issue as to whether the words “issue per stirpes”, as used in the trust instrument, include adopted children and that the settlor so intended. That is the ultimate question. The problem presently at issue is more subtle and indeed novel, involving as it does the materiality and competence of evidence designed to show that the adoptions were motivated for the purpose of defeating contingent remainder-men for, even if the settlor intended to include adopted children as issue per stirpes entitled to take the remainder, he would not have so intended in face of a design and purpose to frustrate his plan of devolution. In other words, may circumstances surrounding the adoption be shown on the issue of intent, even though the validity of the adoption as such may not be affected? Is section 117 of the Domestic Relations Law broad enough to *133 permit pleading such a defense? We think not. For convenience, the pertinent provisions of section 117 have been given paragraph numbers 3 and 4 though not so numbered in the text. They read as follows:
Par. 3. “ The foster parents or parent and the foster child shall sustain toward each other the legal relation of parent and child and shall have all the rights and be subject to all the duties of that relation including the rights of inheritance from each other.”
Par. 4. “As respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the foster child is not deemed the child of the foster parent so as to defeat the rights of remaindermen. ’ ’
These sections enunciate the public policy of the State of New York and should be read together. The third paragraph has always been construed in harmony with its express language that, as between foster parent and adopted child, their relationship in contemplation of law is the same as if naturally situated (Matter of Upjohn, 304 N. Y. 366).
The fourth paragraph creates an exception to inheritance by a foster child from a foster parent “ dependent under the provisions of any instrument on the foster parent dying without heirs ”. In an earlier case involving a question of legislative intent, we read the term ‘1 remaindermen ’ ’, as used in the statute, in the broad sense as including anyone entitled to take and then applied the language strictly to bar the taking of a remainder by an adopted child (Matter of Leask, 197 N. Y. 193). However, when the issue is one of testamentary intent or settlor’s intent under a trust instrument, the right of a foster child to inherit is not tested by the words “ heirs ”, “ issue ” or such like term, but by the intent of the testator or settlor to be derived from the text of the entire instrument and, if need be, by the facts and circumstances existing at its making. In other words, the operation of section 117 depends not on the mere fact of adoption but upon the maker’s intention respecting inheritance by a foster child (Matter of Ward, 9 A D 2d 950, affd. 9 N Y 2d 722) for, in the final analysis, the design of paragraph 4 is to safeguard the intention of the maker and not to defeat it (Matter of Ricks, 10 N Y 2d 231, affg. 12 A D 2d 395). While *134 it can reasonably be said that the underlying rationale of the statute was to protect the rights of remaindermen under a last will and testament or deed of trust, those rights are not absolute but exist and will be made effective in accordance with the maker’s intention.
We are now being asked to read section 117 as an expression of public policy to prevent defeat of the rights of contingent remaindermen by allowing, as permissible pleadings, allegations designed to show that these adoptions were motivated for the purpose and intent of defeating the rights of the respondent charities and thereby frustrating the intent of the settlor. This we cannot do. It matters not whether the foster parent, in adopting a child, was motivated by good or bad intention for, in any event, the mere fact of adoption satisfies the condition of the statute and bars inheritance by the adopted child or children unless an intention to the contrary appear (Matter of Leask, supra). If, however, the settlor at the time he executed the deed of trust intended to include adopted children as issue entitled to take the remainder, it follows with equal cogency that the adoption motive is of no consequence; the intent of the settlor conditions the operation of section 117. It is sufficient if it affirmatively appears from the context of the will or trust and the extraneous facts proper to be considered that the grantor intended to include adopted children (New York Life Ins. & Trust Co. v. Viele, 161 N. Y. 11; Matter of Upjohn, supra), for they are not required to establish that they specifically were contemplated as objects of affection and bounty by the testator (Matter of Charles, 304 N. Y. 776; Matter of Ward, supra). It follows then that the motivation surrounding adoptions has and can have no relevancy in applying section 117.
Section 117 of the Domestic Relations Law, as construed by us, was designed to assure effectuation of the testator’s intent. Thus it mandates that, where a testator has designated remaindermen to share in his estate in the event that a named individual dies without issue, an adopted child does not come within the class unless so intended. The fraud sought to be avoided by the fourth paragraph of section 117 is the defeat of the rights of the remaindermen by force of the Adoption Law alone (Matter of Upjohn, supra; Matter of Walter, 270 N. Y. 201; Matter of Horn, 256 N. Y. 294). But this is not to say that *135 every and any adoption by a life tenant is fraudulent if the consequence thereof is to cut off a remainder. Only where it is not shown by reference to the will, trust instrument or appropriate surrounding circumstances that the testator or settlor intended adopted children to take, does the statute operate to deprive adopted children of any inheritance to which they might otherwise be entitled under other provisions of the Domestic Eelations Law.
Moreover, the rights of these children may not be defeated by any alleged fraud in the adoption proceedings short of the fraud that would lead to the invalidity of the adoption orders. This the respondents recognize by conceding that the adoptions are entitled to full faith and credit in New York since the validity of the California decree has now been judicially upheld (Hubbard v. Superior Ct. [Lincoln Center], 189 Cal. App. 2d 741, petition for rehearing den., petition for hearing in California Supreme Ct. den. 189 Cal. App. 2d 752).
In sum, then, section 117 dealing as it does with an exception to an inheritance is self-operative as soon as the settlor’s intent has been determined. Just as there can be no collateral attack on the validity of an adoption, so too there can be no oblique attack based on alleged fraudulent purpose. The controlling test is what the settlor intended.
The order appealed from should be reversed, with costs to all parties appearing and filing briefs, payable out of the estate, and the question certified should be answered in the affirmative.
Chief Judge Desmond and Judges Fuld, Feoessel, Yah Yoorhis, Burke and Foster concur.
Order of the Appellate Division reversed and that of Special Term reinstated, with costs to all parties appearing separately and filing separate briefs payable out of the trust. Question certified answered in the affirmative.