Nathan R. Sobel, S.
This construction proceeding raises the recurring problem of the effect of the "precautionary addendum” on the rights of an adopted child — in this case a great-grandchild of testator — to take under a class disposition to "issue.”
The history and purpose of the precautionary addendum is later discussed. At the date of death of this testator (1929) it was included in section 114 of the Domestic Relations Law which after providing for the right of inheritance between "foster” parents and "foster” child (the new statutory terms are "adoptive” parents and "adoptive” or "adopted” child; Domestic Relations Law, § 117; EPTL 1-2.10; 2-1.3) provided: "but as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen.” (L 1916, ch 454, § 3.)
I
THE FACTS
The parties have submitted the issues to the court on a stipulated statement of facts. If intention of the testator is *581 relevant, it is conceded that the facts stipulated are the only facts from which such intention could be determined.
Testator Lysander Lawrence executed his will in 1923. He died in 1929!
One of the facts stipulated from which the contesting parties in their briefs draw differing conclusions, is that testator himself had adopted a child in 1898 many years before the execution of his will and later death. The child, Rowena, was the three-year-old orphaned niece of Mrs. Lawrence. Mr. and Mrs. Lawrence were then both in their sixties and had never had any natural or adopted children of their own. Mrs. Lawrence died shortly after Rowena was taken into their home so that Mr. Lawrence alone commenced and completed the adoption.
Rowena was a principal beneficiary of Mr. Lawrence’s 1923 will. She is a "named” beneficiary and not the adopted child whose class disposition is at issue. Rowena married and had a natural daughter Eloise born in 1915. Eloise was eight years of age when testator executed his will and she too is a named principal beneficiary under the will.
Eloise married in 1938 and after eight years without children, in 1946 adopted three-months-old Ann. Ann’s adoption took place some 17 years after testator’s death. It is the adopted child Ann, now Mrs. Ann Baxter Berens, whose rights are at issue in this proceeding.
Apart from some small dispositions to others, Mr. Lawrence left substantial preresiduary dispositions including real property to Rowena. In these dispositions and throughout the will he referred to Rowena as "my adopted daughter.” The parties draw conflicting conclusions from this reference.
He disposed of his substantial residuary in paragraph "TWELFTH” by creating a trust for the benefit of Rowena and Eloise. Both were to share in the income — Eloise in increasing percentages as she grew older so that at age 30, she would share equally with her mother Rowena.
If Rowena died first, as would ordinarily be expected, the entire principal would go to Eloise if she was then 30; if not payment over would be postponed until that date. If Eloise survived her mother but died before age 30, the principal was to be paid to her issue then surviving or if none to three named charities.
Eloise predeceased her mother. She died in 1972 and her *582 mother Rowena five months later in 1973. In that event the will provided: "In the event that Eloise shall predecease her mother, then the said trust shall cease and terminate at the death of her mother Rowena, and be transferred and paid over to the issue * * * of said Eloise, if she shall leave any living at the time of her mother’s death; if not, then the principal shall be divided equally * * * and paid over to the BROOKLYN INSTITUTE OF ARTS AND SCIENCES, YOUNG WOMEN’S CHRISTIAN ASSOCIATION OF BROOKLYN, AND THE BROOKLYN CHILDREN’S AID SOCIETY.”
The sole surviving trustee, First National City Bank, has accounted and requests the court to determine whether the principal shall be paid to Ann Baxter Berens, the adopted child of Eloise, as "issue” or whether the principal shall be paid to the three named charitable corporations, the alternate remaindermen chosen by Mr. Lawrence to take the principal in the event Eloise dies without "issue.” The trustee taking no position has briefed all sides of the issue. Mrs. Berens, the three named charitable corporations and the Attorney-General (for ultimate charitable beneficiaries) have filed extensive briefs.
IN GENERAL
Adoption was unknown at the common law. Where it exists, it exists solely by virtue of statute. (Matter of Thorne, 155 NY 140; United States Trust Co. [Case No 1] v Hoyt, 150 App Div 621; Carroll v Collins, 6 App Div 106.) Similarly, no right in the adopted child to take by intestate succession from or through his adoptive parents can exist unless provision is made by statute.
On the other hand, no statute is required to permit testamentary dispositions to, from and among the adoptive parents and their kindred and the adoptive child and his kindred. Just as complete strangers may make testamentary dispositions to one another so could these persons inter sé and no statute could prohibit it. But all wills do not clearly express the intention of the testator by naming his beneficiaries. Often, and especially when future estates are created, the disposition is to a class such as "issue,” "children,” "descendants,” "heirs,” "next of kin,” "distributees” or other generic terms of like import. Courts confronted with such class dispositions are frequently required to determine whether adopted children are included in the class.
*583 The first goal of a court confronted with such a construction proceeding is to ascertain and enforce the actual intention of the testator. Since the testator is dead (and frequently long before the adoption took place as in the instant case) the only legitimate inference is that testator had no actual intention whatsoever concerning the appearance long afterwards of an adopted child among the class membership to which he had directed disposition. The very fact that a construction issue has arisen is often proof that testator never thought of the problem at all, for if he had, he would have expressed his intention in clearer terms.
Faced with an issue in which actual intention cannot be found, courts are required to construct a fictitious intention. These are presumptions or rather constructional preferences based on accumulated experience and having a rational connection with what most testators in the circumstances presumably would intend. Such judicially created constructional preferences, though based on presumed rather than actual intent, are essential to secure predictability and certainty in the law and provide guidance for the courts and also for attorneys in their drafting problems.
Most important (at least for the comparative convenience of the courts) such constructional preferences (hereafter "presumptions”) also serve the useful purpose of allocating the burden of proof.
From these generalities it is evident that whether adopted children are presumed included or excluded from class dispositions will generally determine the issue. The burden to overcome the presumption will shift to the opposing party. Implicit in the resort to the presumptions is a determination that no evidence of testator’s actual intent is contained in the four corners of the will. The party assisted by the presumption will generally prevail since often no contrary proof is available.
That litigation has been frequent and decisions seemingly irreconciliable (see Matter of Grace, 46 Misc 2d 878, 879) is perhaps due to two factors.
First, the earlier statutes governing the rights of adopted children in class dispositions were ambiguously drafted in many respects but principally in failing to allocate the burden of proof. (As will be later discussed, this latter fault was remedied by the Legislature by creating a statutory presump *584 tion but applicable only to wills of persons dying after March 1, 1964.)
Second, and more significant, there has been a gradual and perceptible shift in the high court decisions from a presumption to exclude to a presumption to include. For some reason, not today understandable, the earlier decisions simply refused to give recognition to the status of adopted children as equal to that of natural children although the statutes plainly and clearly so directed. Later decisions have turned "full-face” around in such construction.
All this is now discussed.
THE STATUTES
The earliest adoption statute enacted in 1873 (L 1873, ch 830, § 10) denied to the adopted child "the right of inheritance.” Beginning with 1887 (L 1887, ch 703) the adopted child was given the right of inheritance. To accomplish that purpose the 1873 statute was amended by the 1887 statute as follows [bracketed matter omitted and italicized matter added by the 1887 statute]:
"The foster parent or parents and the person adopted shall sustain toward each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation, [excepting] including the right of inheritance and the heirs and next of kin of the child so adopted shall be the same as if the said child was the legitimate child of the person adopting, except that as respects the passing and limitation over of real and personal property, under and by deeds, conveyances, wills, devises and trusts, dependent upon the person adopting dying without heirs, said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting so as to defeat the rights of remainder-man”.
The first part of the statute dealing with "the right of inheritance” was mainly concerned with intestate succession (discussed infra).
The second part clearly referred to testamentary (and inter vivos) dispositions. While somewhat ambiguous, it has been construed as referring to class dispositions by strangers to the adoption to a class of the adoptive parents of "heirs,” "issue,” "children,” "descendants” etc.
The earlier 1873 statute provided that adopted children *585 shall be "deemed” (presumed) not to be included in any class disposition whether it was a simple class disposition or a remainder disposition to a class with or without an alternate disposition over to substitutionary remaindermen.
The 1887 statute provided that the adopted child shall not be "deemed” to be included only in those class dispositions to which the "precautionary addendum” was applicable, viz. those which were "dependent upon the person adopting dying without heirs — so as to defeat the rights of remainderman [remaindermen]”. It would seem that the Legislature intended that adopted children should be included in simple class dispositions or remainder dispositions where there was no further limitation over to alternate substitutionary remaindermen. This was not however the contemporaneous construction of the statute given by the courts and as will later be discussed, it was not until 1965 (Matter of Park, 15 NY2d 413, 417) that the high court held that except perhaps where the precautionary addendum was applicable, the presumption was and always had been to include adopted children in simple class dispositions.
Although amended many times in other respects, the statute’s effect on class dispositions was never clarified. (See Domestic Relations Law of 1896, § 64 [L 1896, ch 272, as amd by L 1897, ch 408]; Domestic Relations Law, § 114 [L 1909, ch 19, as amd by L 1915, ch 352]; Domestic Relations Law, § 115 [L 1938, ch 606; Domestic Relations Law, § 117 [L 1961, ch 147].)
Finally, in 1963 (L 1963, ch 406, eff. as to wills of persons dying after March 1, 1964) all references to the effect on adopted children of class dispositions in wills was removed from section 117 of the Domestic Relations Law. The same Legislature (L 1963, ch 310, eff. as to the wills of persons dying after March 1, 1964) added what is presently EPTL 2-1.3, providing: "Unless the creator expresses a contrary intention, a disposition of property to persons described in any instrument as the issue, lawful issue, children, descendants, heirs, heirs at law, next of kin, distributees (or by any term of like import) of the. creator or of another, includes: (1) adopted children and their issue.”
In place of the court created presumptions, the Legislature adopted a statutory presumption. With respect to the wills of all persons dying after March 1, 1964, the presumption is to include adopted children in all class dispositions — those which *586 are simple class dispositions and those to which the precautionary addendum had theretofore been applicable.
The 1963 statutes were recommendations of the Bennett Commission on Estates (N.Y. Legis Doc, 1963, No. 19, Appendix F, "Adopted Children as Members of a Class” pp 163-177). The report after discussing the confusing and seemingly irreconcilable decisions of the courts with respect to the applicable presumptions and the' resulting burden of proof, recommended that unless the testator expresses a contrary intention, the presumption should be to include adopted children in all class dispositions. Sufficient time before the effective dates of the new statutes was provided to allow testators to amend existing wills if so desired.
For the past 10 years, attorney draftsmen have been on notice that unless a will specifically provides otherwise, adopted children are included in all class dispositions.
INTESTATE SUCCESSION
As noted, the statute of 1887 (L 1887, ch 703) and later statutes placed the adopted child within the bloodlines of his new family for the purposes of intestate succession. The adoptive child was a distributee of his adoptive parents and their natural issue (United States Trust Co. [Case No 1] v Hoyt, 150 App Div 621, supra). All of the kindred direct and collateral of the adoptive parents became distributees of the adopted child (Carpenter v Buffalo Gen. Elec. Co., 213 NY 101; Matter of Hollstein, 251 App Div 771). Despite the quite obvious intention to also make the adopted child a distributee of the other direct and collateral kindred of the adoptive parents, the statute did not so expressly provide. Early cases held that the adopted child could so inherit. (United States Trust Co. v Hoyt [case No 2], 115 Misc 663, affd. 173 App. Div. 930, affd 223 NY 616) but later cases held that he could not (Matter of Hodges, 294 NY 58; Matter of Hall, 234 App Div 151, affd 259 NY 637; Hopkins v Hopkins, 202 App Div 606, affd 236 NY 545; Matter of Winkler v New York Car Wheel Co., 181 App Div 239, 241; Matter of Powell, 112 Misc 74, affd 193 App Div 965.) These cases are mentioned for the decisions express the early reluctance of the courts to include adopted children even in the line of intestate succession although a statute at least impliedly required them to do so. That reluctance was expressed in a repeated observation that "one could not adopt or create heirs for another.” This of course was *587 precisely what the adoption statute did and was purposed to do.
Finally, in 1963, on recommendation of the Bennett Commission on Estates (NY Legis Doc, 1963, No 19, Appendix E, "Intestate Distribution Adopted Children” pp. 146-160) amendments were enacted which placed the adopted child for the purpose of intestate succession in the identical position of the natural child. The report stated that this was the status which the statute from its inception had always intended.
Intestate succession is discussed since it has relevance to the precautionary addendum. It is understood of course that an adoption may cut down the intestate share of a surviving spouse and natural issue. Since however an adoption places the adopted child totally in the bloodline of the adoptive family, an adoption by a collateral relative may cut down or totally defeat the intestate shares of equal or more remote collateral relatives including those perhaps preferred by the intestate. The point is that intention has nothing to do with it; the intestate may be totally unaware of the specific adoption or he may be opposed to it or to adoption generally.
In other respects too, irrespective of the intent of a testate decedent, an adopted child may cut down or defeat the rights of preferred beneficiaries. For example — (1) Under the anti-lapse statute (EPTL 3-3.3, subd [b]) a disposition to an adoptive parent who predeceases will not lapse into the residuary or be shared by remaining residuary legatees but will vest by force of law in the adopted child (Matter of Walter, 270 NY 201); (2) A child adopted by testator after the execution of his will and not mentioned or provided for therein, may nevertheless take an intestate share in the same manner as would an after-born child. (EPTL 5-3.2; Matter of Guilmartin, 277 NY 689; Bourne v Dorney, 184 App Div 476, affd 227 NY 641); (3) An adopted child, to the same extent as a natural child, may elect against an excessive disposition by his adoptive parent for charitable purposes (EPTL 5-3.3; Matter of Mawhinney, 146 Misc 30, affd 239 App Div 874). All of these rights are afforded by statute or decisional law to the adopted child and intention often plays no part.
As Judge Fuld observed in Matter of Upjohn (304 NY 366, 373, 374):
"Embodied in our adoption statute is the fundamental social concept that the relationship of parent and child, with all the personal and property rights incident to it, may be estab *588 lished, independently of blood ties, by operation of law, and that has been part of the public policy of this state since 1887: * * *
"Wills, too, must be read and construed in harmony with the legislative policy of placing adopted children on a level with natural born offspring.”
SIMPLE CLASS DISPOSITIONS
A simple class disposition, for the purpose of this discussion, is one in which the "precautionary addendum” is not applicable.
A few cases, construing the 1887 statute literally, held that in the absence of proof to the contrary, the presumption was to include adopted children in such disposition.
In Matter of Horn (256 NY 294, 297) the Court of Appeals held "The only instance in which the adopted child is not deemed to be the child of the foster parent is where future estates may be cut off by such adoption.”
In Matter of Cohn (184 Misc 258, 261-262, affd 271 App Div 775, affd 297 NY 536) Surrogate Foley observed: "The statute which confers the right of inheritance on the foster child contains one limitation, and that applies where future estates created under a will or deed may be cut off by such adoption. * * * In order to defeat his right to take as an heir of the granddaughter, it must appear from the will itself that the testator indicated his intent to exclude an adopted child and to confine the gift to persons related by blood to him.”
In Matter of Charles (200 Misc 452, 455, affd 279 App Div 741, affd 304 NY 776) Surrogate Frankenthaler noted:— "Where there is a simple gift to such a class, adopted children may ordinarily participate therein unless language appears in the instrument showing an intention to exclude them [citing cases].”
These cases evidently did not represent the majority view. Other cases held that whether a simple class disposition was at issue or one involving the precautionary addendum, i.e. one in which the adoption would defeat an alternative remainder disposition, the presumption was to exclude adopted children in the absence of an intention to include.
Thus, in Matter of Upjohn (304 NY 366, 375, supra) the court held:
"What the testator meant when he used the words 'issue’ *589 and 'descendants’ is not to be decided in vacuo. It is impossible for a court to ascertain the meaning with which they were employed in a particular will without considering the context of the entire instrument and the background of facts and circumstances existing when the will was made. (Cf. Matter of Title Guar. & Trust Co., 195 N. Y. 339, 344.) The rule in this state, declared in New York Life Ins. & Trust Co. v. Viele (161 N. Y. 11, 20), is that the limitation will be construed to designate only those related to the named ancestor by blood if 'there is nothing to the contrary to be found in the context of the instrument or in extraneous facts proper to be considered.’ In other words, in the absence of any indication of the testator’s intent, it will be assumed that the testator did not envisage adopted children taking under the limitation. That, though, is a rule of construction and nothing more. Where the testator’s design to include an adopted child is clear, the limitation will be construed to effectuate that intention.”
In Matter of Ricks (12 AD2d 395, 396, affd 10 NY2d 231) the First Department citing Matter of Upjohn (supra) held: "In general a limitation in favor of 'issue’ or 'descendants’ will be construed to include only persons who have a blood relationship to the ancestor. The terms 'have a biological flavor, connoting persons who have in fact been generated by the designated person.’ (3 Powell, Real Property [1952], § 360, p. 132; New York Life Ins. & Trust Co. v. Viele, 161 N. Y. 11.) It is only when the instrument by its context indicates a contrary intention, or properly considered extraneous facts point to a different conclusion, that the words 'issue’ and 'descendants’ will be held to include adopted children.”
The Court of Appeals affirmed in Ricks for the reasons stated in the opinion of the Appellate Division. Three Judges dissented in an opinion by Judge Fuld who had written the opinion in Upjohn (supra). Judge Fuld concluded that a simple class disposition was at issue and not one involving the precautionary addendum. In such case he added (p 236) "there is nothing to indicate an intention on the part of the grantor to exclude such adopted children” indicating that where the precautionary addendum was not involved the presumption is to include adopted children.
These apparent conflicts were finally settled by Matter of Park (15 NY2d 413, supra). The court made (p 416) "A fresh reading of the statutory prescription that natural children and foster children be treated as equals in legal rights which *590 has been in effect in New York almost 80 years (L. 1887, ch. 703)”. One of the problems in construction the court said, had been occasioned by the decision in New York Life Ins. & Trust Co. v Viele (161 NY 11). That decision had held that the presumption was to exclude adopted children from a disposition to “issue” unless there was some affirmative proof of an intention to include them. Viele had been cited for that view in most prior decisions of the court. The Park court noting that the 1887 statute played no part in the Viele decision (p 417) : “But in response to the requirements of a statute such as the Domestic Relations Law (§ 117), the presumption is just the other way. A testator or settlor must know that in the light of New York policy a foster child has exactly the same 'legal relation’ to the parent as a natural child. In the absence of an explicit purpose stated in the will or a trust instrument to exclude such a child, he must be deemed included, whether the word 'heir,’ 'child,’ 'issue’ or other generic term expressing the parent-child relationship is used.”
Observing also that part of the judicial difficulty has been caused by the precautionary addendum, the court added (p
418) :
“If one looks at the cases in this court which followed upon the enactment of the statute measured against the precautionary addendum prohibiting the use of the adoption device to frustrate remainders, it will be seen the sense in which the statutory purpose was usually read was to treat the rights of an adopted child for all purposes as those of a natural child unless the act of adoption itself and alone cut off a remainder.”
The Park decision is explicit in at least one respect. With respect to simple class dispositions which do not “frustrate” or “cut off” remainders, the presumption is to include adopted children unless there is expressed “an explicit purpose” to exclude such children.
Park was decided after the effective date of EPTL 2-1.3. However, it involved a 1909 will and a death before March 1, 1964. The net effect of the Park decision is however to make the policy of new EPTL 2-1.3, at least with respect to simple class dispositions, retroactive to 1887. Park was followed in the later decision of Matter of Silberman (23 NY2d 98).
What was not decided by Park, or even hinted at, was whether the Park presumption to include adopted children in class dispositions was applicable to class dispositions which *591 under the precautionary addendum defeated the rights of alternate remaindermen.
THE PRECAUTIONARY ADDENDUM
There is no doubt whatsoever that at least prior to Park, the presumption was to exclude adopted children from class dispositions whenever the precautionary addendum was applicable.
An early case, Matter of Leask (197 NY 193, 199) established the principle that the statutory presumption was to exclude where the precautionary addendum was applicable.
In Matter of Charles (200 Misc 452, 460, aifd 279 App Div 741, aifd 304 NY 776) Surrogate Frankenthaler while holding that there is a presumption to include adopted children in simple class gifts held the opposite to be true where the precautionary addendum is applicable: "There must be an affirmative showing not of an intention to use the word 'children’ in its general significance but of a positive intention to permit adopted children to take to the exclusion of named remaindermen. Where such remaindermen are selected by the testator himself, the Legislature has assumed that such persons would be preferred by the testator over adoptees.”
In Matter of Rockefeller (Hubbard) (12 NY2d 124, 134) the court referring to the precautionary addendum stated — "the mere fact of adoption satisfies the condition of the statute and bars inheritance by the adopted child or children unless an intention to the contrary appear.”
The first case involving the "precautionary addendum” to reach the Court of Appeals following its Park decision was Matter of Johnson (17 NY2d 448). The courts below had held that the Park presumption was inapplicable and that the presumption was to exclude adopted children. In a brief memorandum decision, the Court of Appeals reversed (p 449) "with direction that the will be construed to include the adopted child, Michael Brennan, as a qualified remainder-man.” It is not however certain that the reversal was based on the Park presumption or an alternate basis separately reached by Park that the precautionary addendum was not applicable (discussed infra). The latter likely is the case.
The Third Department in 1966 in Matter of Washburn (24 AD2d 83, 87, affd 17 NY2d 895) held with respect to the precautionary addendum — "In the absence of any indication of *592 testator’s intent, it will be presumed that he did not envisage adopted children taking under the limitation”. It is observed parenthetically that in Washburn (also in Leask, 197 NY 193, supra) the limitation over was not to contingent remainder-men but was rather a reversion to testator’s residuary estate. Whether the precautionary addendum should apply at all, in view of later holdings, is not altogether free from doubt.
In 1968 Surrogate Di Falco held that the Park presumption was applicable to all class gifts including those which would defeat a remainder. The First Department affirmed without opinion. (Matter of Schermerhorn, 33 AD2d 891, affg NYLJ, Aug. 9, 1968, p 9, col 6.)
In 1970 the Second Department (Matter of Carll, 34 AD2d 793, affd without opn 27 NY2d 917) held explicitly:
"Relying upon the principle enunciated in Matter of Park (15 N Y 2d 413) and reaffirmed in Matter of Silberman (23 N Y 2d 98), i.e., that there is a presumption that adopted children are included within the term 'issue’ absent any indication of an intent to exclude them, the learned Surrogate found no language in the will to indicate an exclusion of the adopted child and held that the Park presumption prevailed. In our opinion, the Park presumption is not controlling. Rather, the proceeding was governed by the 'precautionary addendum’ (Matter of Park, supra, pp. 416-417) in the statute from which the present section 117 of the Domestic Relations Law was derived (Domestic Relations Law of 1896, § 64 [L. 1896, ch. 272], as amd. by L. 1897, ch. 408). The same statutory 'precautionary addendum’ is operative in the instant case (the will was made in 1902 [the testator died in 1904]). It provided in substance that, in relation to 'the passing and limitation over’ of property 'dependent * * * on the foster parent dying without heirs,’ the foster child 'is not deemed the child of the foster parent so as to defeat the right of remaindermen.’ Under that provision, the intent of the testator, however, conditioned the operation of the statute. 'It is sufficient if it affirmatively appears from the context of the will or trust and the extraneous facts proper to be considered that the grantor intended to include adopted children’ (Matter of Rockefeller [Hubbard], 12 N Y 2d 124, 134).”
A month after the affirmance of Carll in the Court of Appeals the First Department (Matter of First Nat. City Bank [Hilton], 36 AD2d 514) held: "In the absence of an explicit purpose stated in the trust instrument to exclude an adopted *593 child, such child 'must be deemed included’ within the term 'descendant’ (Matter of Park, 15 N Y 2d 413, 417). The ParkSilberman presumption in favor of adopted children extends to circumstances in which the so-called 'precautionary addendum’ (Domestic Relations Law, § 117, deleted by L. 1963, ch. 406) would otherwise be applicable (Matter of Schermerhorn, N.Y.L.J. August 9, 1968, p. 9, col. 6, affd 33 A D 2d 891).”
The first case following Park-Silberman in which the Court of Appeals discussed at length the precautionary addendum was Matter of Snowden (31 NY2d 322, revg 38 AD2d 926). The First Department without mentioning its earlier decisions in Schermerhorn (supra) and Hilton (supra) affirmed a finding below that the adopted children were excluded as "issue” under the terms of the trust. Two Justices dissented inter alia on the ground that the Park presumption prevailed. The Court of Appeals reversed on grounds unrelated to the issue under discussion (but discussed infra). What is significant is that the court neither cited Park nor discussed whether the presumption where the precautionary addendum was applicable was to include or exclude.
In Matter of Brooks (39 AD2d 942, affd 32 NY2d 752) the Second Department citing its Carll holding (supra), held that the adopted child was not presumed to be included in a class disposition where the "precautionary addendum” was applicable. The Court of Appeals affirmed without opinion.
The lower courts too, post-Park, have reached conflicting conclusions with respect to the presumption when the precautionary addendum is applicable (cf. Matter of Henderson, 64 Misc 2d 280; Matter of Aldrich, 74 Misc 2d 467 and Matter of Grace, 46 Misc 2d 878 [all presumption to include], with Matter of Notman, 56 Mise 2d 877; Matter of Pelham, 63 Misc 2d 377; Matter of Clark, NYLJ, April 3, 1973, p 21, col 4; Matter of Petty, NYLJ, March 1, 1974, p 16, col 5; Matter of Seligman, NYLJ, April 8, 1974, p 15, col 5 [presumption to exclude]).
This court in Matter of Henderson (supra) held that the presumption is to include adopted children in a class gift where the precautionary addendum is applicable. This seemed a logical conclusion from the Park holding that "the presumption is the other way” (15 NY2d, at p 417) following as it did on Upjohn’s declaration that the precautionary addendum is not a statutory command but "a rule of construction and nothing more” (304 NY, at p 375). A rereading of those *594 decisions and subsequent decisions compels the conclusion that Park did not intend to reverse the presumption in dispositions where the precautionary addendum is applicable. In such a case the presumption is to exclude. The rule to be applied is best stated in Matter of Rockefeller (Hubbard) (12 NY2d 124, 134-135): "Section 117 of the Domestic Relations Law, as construed by us, was designed to assure effectuation of the testator’s intent. Thus it mandates that, where a testator has designated remaindermen to share in his estate in the event that a named individual dies without issue, an adopted child does not come within the class unless so intended. * * * Only where it is not shown by reference to the will, trust instrument or appropriate surrounding circumstances, that the testator or settlor intended adopted children to take, does the statute operate to deprive adopted children of any inheritance to which they might otherwise be entitled under other provisions of the Domestic Relations Law.” (See also Matter of Snowden, supra, 31 NY2d at 322.)
In summary, the effectuation of the precautionary addendum does not turn on the mere fact of adoption. The addendum is not a statutory absolute. It may be shown that the testator intended to include adopted children in the class disposition.
If this affirmatively appears from the will itself, the precautionary addendum is not applicable at all. The presumption will be to include.
If extrinsic proof is required to establish an intention to include, then and then only, may it accurately be said that the burden to prove such intention is on the adopted children.
EVIDENCE OF INTENTION
When the precautionary addendum is applicable, the burden is on the adopted children to establish an intention on the part of the testator to include them in the class disposition.
When not applicable no such proof is required.
As discussed, the "precautionary addendum” is not applicable to simple class dispositions which do not defeat or "reduce” (see Matter of Snowden, 31 NY2d, at p 330) the disposition over to alternate remaindermen.
It is not applicable if the testator is himself the adoptive parent of the child whose rights are at issue. (Pross v Anson, 273 App Div 860; Matter of Sands, 20 Misc 2d 647.) The *595 precautionary addendum is applicable only if the testator is a "stranger to the adoption” (Matter of Nicol, 19 NY2d 207, 211), not the adoptive parent himself.
By the terms of the statute, the precautionary addendum is not applicable if upon his death the adoptive parent has both natural and adopted "children”, "issue”, etc. In such a case he does not die "without heirs” and the adoption alone does not "defeat the rights of remaindermen”. If such rights are defeated it is by virtue of the existence of natural children and not by the adoption. This is the holding in Matter of Park (15 NY2d 413, supra, and cases cited.) (See, also, Matter of Johnson, 17 NY2d 448, supra; Matter of Grace, 46 Misc 2d 878, supra; Matter of Eagan, 75 Misc 2d 1006; Matter of Gilbert, NYLJ, Dec. 13, 1973, p 16, col 2.)
The "precautionary addendum” will not be applicable when it appears affirmatively from the terms of the will itself that testator intended to include adopted children in his class disposition. Thus if the testator expressly provided that his property should or could be divided among those not among his bloodline, such a provision suffices to establish that he intended to include adopted children in his class disposition. In Matter of Snowden (31 NY2d 322, supra) the settlor of the inter vivos trust permitted his children, the income beneficiaries, to appoint the trust principal outside his bloodline and only in default of such appointment was there a disposition to his "issue”. The court held that having permitted his children to appoint generally anyone selected, "the settlor must be deemed, by his lack of concern for bloodlines, to have had in mind that adopted children might likewise take” (p 329). In Matter of Charles (304 NY 776, affg 279 App Div 741, affg 200 Misc 452, supra) the testatrix permitted her daughter to appoint the trust principal, among others to her husband. In default of exercise the principal was to be paid to "issue” [who were all adopted] if none, then alternatively to a niece. Despite the failure to exercise the power, Surrogate Frankenthaler held that the precautionary addendum was not applicable since the rights of the remainderman niece could have been cut off by the exercise of the power: the niece’s rights were therefore not defeated by the adoptions alone. (See, also, Matter of Lynde, 28 Misc 2d 174.)
Chief Judge Fuld in Snowden noted that it is not material in which order the contingencies arise — "what is important and operative is the 'intent of the settlor’” (p 329). If that is so *596 then the bloodline "exception” is very broad indeed. The fact that the adoptive parents of the class in issue are not themselves within the bloodline should establish affirmatively that the testator considered bloodline irrelevant. And the same result should follow if the testator at the time of execution of his will had no direct or collateral relatives. Also if the intention of the testator is what is "important and operative” then it should not matter whether the contingent disposition to persons outside the bloodline is first, middle or last in line except perhaps where the earlier dispositions had exhausted testator’s bloodline. (See Matter of Wilson, 64 Misc 2d 208, 211; Matter of Shepard, NYLJ, June 1, 1972, p 20, col 5; Matter of Shepard, NYLJ, Aug. 4, 1972, p 9, col 2.) It is noted that in Matter of Brooks (39 AD2d 942, affd 32 NY2d 752, supra ) where the bloodline exception was not invoked by the courts, the power to appoint was not a general power but one limited to the bloodline of the testator.
Basic to the legislative purpose and judicial construction of the precautionary addendum, is the principle that the adoption could cut off a remainder selected by the testator and possibly preferred by him over adopted children. This principle has little validity when the remainder cutoff is the last alternative and outside the bloodline simply because prior contingent dispositions had exhausted testator’s bloodline. However in such circumstances testator’s interest and concern for the last alternate remaindermen is certainly relevant. The stipulated facts in the instant case establish that Mr. Lawrence was a life member and trustee of the Brooklyn Institute of Arts and Sciences. Also that in his lifetime he made modest annual contributions to the Children’s Aid Society of Brooklyn.
Where the precautionary addendum is applicable and it does not appear affirmatively from the will itself that testator intended to include adopted children then the burden of proof is on such children to establish that they were intended to be included in the class disposition.
A series of cases have held that proof that the testator knew of the particular adoption before execution of his will, suffices to establish an intention to include.
In Matter of Upjohn (304 NY 366, 375, supra) Judge Fuld observed: "Of surpassing significance is the fact that, when the testator drew the will, he had full knowledge of the adoption that had taken place eleven years earlier when Alice *597 Elizabeth was two months old. * * * Where it appears that he knew of the adoption, he is taken, therefore, to have intended inclusion of the adopted child, and his will is so construed, unless other language in the will or other circumstances reflect a different or contrary intention [citations].” In addition to the decisions in this and other States cited by Judge Fuld later cases have so held. (Matter of Day, 10 AD2d 220; Matter of Myres, 205 Misc 880; Matter of Camp, 6 Misc 2d 593; Matter of Bergen, 27 Misc 2d 804; Matter of Jacobson, 28 Misc 2d 1063.)
When the adoption took place after the execution of the will, the presumption to exclude may be overcome by proof that testator generally favored adoption. Proof that he favored adoption may be shown to establish that he considered bloodline irrelevant.
In Matter of Ward (9 AD2d 950, affd 9 NY2d 722) the Second Department, reversing the Surrogate, held: "There is testimony that the testatrix favored adoption generally, that she approved and advocated adoption of children for her married but childless daughter, and that she desired in the disposition of her estate to treat all three of her children equally. * * * We find that the evidence abundantly establishes that the testatrix intended to benefit a child adopted by her son”.
In Matter of Day (10 AD2d 220, supra) the donor knew of the adoption of one child by one of his sons. Another child adopted by another son seven years after the death of the donor, the First Department held, must also be included. Proof that he knew of and approved the first adoption is proof that he generally favored adoption, i.e., that he considered bloodline irrelevant.
Cases which had preceded Ward and Day had held that a child adopted after the death of the testator would not be included in a class disposition despite proof that testator favored adoption (Mutter of Nicol, 3 Misc 2d 898) or had himself adopted a child (Matter of Smith, 14 Misc 2d 205). Later cases held such proof convincing. (Matter of Wallerstein, 33 Misc 2d 801; Matter of Andrus, 44 Mise 2d 220.) The fact that testator’s own children were adopted was accepted as conclusive of the issue. (Matter of Wilson, 64 Mise 2d 208, supra; Matter of Shepard, NYLJ, June 1, 1972, p 20, col 5, supra; Matter of Shepard, NYLJ, Aug. 4, 1972, p 9, col 2, supra.)
*598 There is perhaps another "exception”. When the will names the adoptive parent himself to take the remainder if he survives a measuring life or to a stated age, the testator manifests an intention to include his adopted children. It is reasoned that if the named remainderman had survived as anticipated and taken the remainder, his adopted children would in all probability take either by intestacy or by will. It is presumed therefore that the testator has no objection to the adopted children taking in the contingency that the adoptive parent died before the remainder vested in him. (Matter of Upjohn, 304 NY 366, 377, supra.)
FRAUDULENT INTENTION
In Upjohn (supra, p 378) the court, quoting from earlier cases noted concerning the precautionary addendum: "The legislature was particularly concerned about the perpetration of fraud on the rights of remaindermen 'through an adoption for the very purpose of cutting out a remainder.’ (Matter of Walter, supra, 270 N.Y. 201, 206.) As we wrote in Matter of Horn (supra, 256 N.Y. 294, 297): 'Where the passing by limitation over of real or personal property is dependent on a parent dying without heirs or children, it would be very easy for a person having no child or children to adopt one and thus cut off a contingent remainder. The statute was aimed at such a possibility.’ ”
Later in Matter of Snowden (31 NY2d 322, 327, supra) the court added: "In point of fact, the precautionary addendum was merely designed to prevent 'the perpetration of fraud on the rights of remaindermen "through an adoption for the very purpose of cutting out a remainder.” ’ (Matter of Upjohn, 304 N.Y. 366, 378 supra.) That the danger of such fraud is minimal is confirmed by the Legislature’s decision, reached in 1963, to delete the precautionary addendum and to provide expressly that adopted children are to be included in the generic terms 'issue’ and the like, '[ujnless the will or other instrument specifically provides to the contrary’ (former Decedent Estate Law, § 49, L. 1933, ch. 310; see, also EPTL 2-1.3).”
Matter of Rockefeller (Hubbard) (15 AD2d 131, revd 12 NY2d 124, supra) raised only pleading issues and must be read in that light. It held that since the precautionary addendum turned solely on the intention of the testator to include or exclude and such intention existed or did not exist at the time of his death, it was improper to plead that an adoption *599 which took place long after testator’s death was fraudulently motivated for the purpose of cutting off the remainder. Judge Steuer in a well-reasoned decision below had held that while testator may very well have intended to include in his class disposition, children adopted from natural and worthy motives, such intention did not extend to include children adopted for the sole purpose of defeating the rights of remaindermen selected by him. This is a fair rationalization of the intent of most testators. Perhaps then, in view of the many "exceptions” to the precautionary addendum and as suggested by some decisions (Matter of Dunham, 34 Misc 2d 655, 658; Matter of Taintor, 32 Misc 2d 160, 163) the issue whether adopted children are included or excluded should turn solely on the motivation for the adoption. Motivation or intention is often a court or jury issue in areas of the law much more important than adoption. Furthermore it seems to be precisely what the Legislature intended in the 1887 statute.
In this case it is suggested in one of the briefs but not seriously that the adoption of Ann by Eloise was motivated to defeat the rights of the charitable remaindermen. This may be answered by the simple observation that in 1946 when the adoption took place Eloise was 31 and Rowena 51. It may be assumed that Eloise confidently expected to outlive her mother and become herself the remainderman. The court finds that the adoption was not fraudulently motivated.
DECISION
This court is required to decide whether Ann Baxter Berens or the three worthy alternate charitable remaindermen are entitled to receive this very substantial remainder interest. In doing so this court may not apply the statutory presumption (EPTL 2-1.3) applicable to wills of persons dying after March 1, 1964, which would require a finding in favor of the adopted child.
Instead, since no evidence of testator’s actual intention exists, this court is required to resort to the judicially created constructional preferences or presumptions heretofore discussed at length.
The court’s findings are made in the order in which these are discussed in the opinion.
1. Since Mr. Lawrence throughout his will referred to the principal beneficiary thereof as "my adopted daughter *600 Rowena” it appears affirmatively from the context of the will that testator "must be deemed, by his lack of concern for bloodlines, to have had in mind that adopted children might likewise take” (Matter of Snowden, 31 NY2d, at p 329). In such circumstances the precautionary addendum is not applicable at all. In the absence of proof of contrary intention, Ann Baxter Berens is deemed to be included in the class disposition to the "issue” of Eloise. (Matter of Park, 15 NY2d, at p 417.)
2. Since the extrinsic proof as stipulated establishes that Mr. Lawrence at his death had no direct or collateral relatives living, he necessarily considered his own bloodline irrelevant. Such extrinsic proof is sufficient to overcome any presumption to exclude adopted children from his class disposition to the "issue” of Eloise who herself and whose mother Rowena were not within testator’s bloodline.
3. As the stipulated facts establish Mr. Lawrence himself had adopted the child Rowena before the execution of his will. Although it is argued in the briefs that this was an adoption compelled by circumstances surrounding the death of Rowena’s parents, the fact remains that whether initially "compelled” or not, he did make Rowena the principal beneficiary under his will. Such proof suffices to establish that Mr. Lawrence "favored adoption generally” (Matter of Ward, 9 AD2d 950, affd 9 NY2d 722, supra) and also that he considered bloodline irrelevant (Matter of Day, 10 AD2d 220, supra). The fact that testator’s own children were adopted would in the absence of clear and convincing evidence to the contrary be sufficient to overcome any presumption of an intention to exclude adopted children from a class disposition to "issue”. As discussed heretofore, the precautionary addendum is not applicable at all if the testator is himself the adoptive parent of the "child” whose rights are at issue (Pross v Anson, 273 App Div 860, supra; Matter of Sands, 20 Misc 2d 647, supra). Logically no different rule should apply when the class disposition is to "issue” of the testator’s own adoptive child. In the instant case Mr. Lawrence made both his adopted child Rowena and her natural child Eloise the principal beneficiaries of his will. Standing alone, such proof is found sufficient to overcome any presumption of an intention to exclude the issue of Eloise. This finding (3) is the major premise on which this court bases its decision.
In summary, since Mr. Lawrence’s actual intention cannot be determined, this court is required to resort to the judicially *601 created constructional preferences based on accumulated experience and rationally connected with what most testators in the same circumstances would intend. The conclusion is reached that Mr. Lawrence would have intended to include Eloise’s adopted child Ann Baxter Berens in his class disposition to her "issue”.
The compensation of the attorneys is reserved and will be fixed after all appeals have been finally determined. The decree shall so provide.