Bergan, J.
This appeal involves the relative rights of a natural child and of an adopted child to take under a will. The statute was, at the time relevant to the controversy, explicit on this subject and provided that a foster child “shall have all the rights ’ ’ of the ‘ ‘ relation ” of “ parent and child ’ ’ (Domestic Relations Law, former § 114, re-enacted as § 115 by L. 1938, ch. 606, and renum. § 117 by L. 1961, ch. 147).
The Surrogate has ruled as to the disputed benefits flowing from the will that, of two children, the natural child gets everything, the foster child nothing, and this has been affirmed by the Appellate Division. We are of opinion this result runs against the explicit mandate of the statute and that the children should be treated alike.
*416 The testator died in 1909 and his will was admitted to probate in Nassau County. He created trusts for each of his children who survived him, the income payable to a child for life and “ as each of said children * * * dies, the principal of the trust fund of such child * * * shall be distributed among his issue him or her surviving in equal shares
One of the testator’s children, a trust beneficiary, was Mary Park Neilson, who died in 1961. Raymond P. R. Neilson, Jr., who was her son, predeceased her. He had a natural daughter, the respondent, Anne Neilson Conrad, and an adopted son, appellant Raymond P. R. Neilson, III. The issue revolves about the rights of these two children to take the portion of the principal of the trust fund which would have gone to their parent had he survived Mary Park Neilson.
A fresh reading of the statutory prescription that natural children and foster children be treated as equals in legal rights, which has been in effect in New York almost 80 years (L. 1887, eh. 703), would inescapably lead to holding that the two children of Raymond P. R. Neilson, Jr.—his natural child and his adopted child—be treated alike and that both take the same share in the trust principal that would have gone to their father. Both, under the express words of that statute, must be treated as “his issue” within the terms of the will. The statutory words ‘ ‘ shall have all the rights ’ ’ of the relation of “ parent and child ” can be read no other way.
This, indeed, is the sense in which the words were read in the leading decisions of this court addressed to the effect of those particular words of the statute. (Cf. Matter of Cook, 187 N. Y. 253; Carpenter v. Buffalo Gen. Elec. Co., 213 N. Y. 101.)
Part of the judicial difficulty with this language, appearing on its face very explicit, has historically been due to a precautionary addendum in a separate unnumbered paragraph in section 117 of the Domestic Relations Law as it formerly read. This addendum was not intended to cut down the rights of adopted children measured against those of natural children. It was intended, rather, to prevent the device of an adoption from being used to cut off a remainder which would have followed had there been no child.
The statutory paragraph provided that in relation to “the passing and limitation over ” of property “ dependent * * * *417 on the foster parent dying without heirs ” the foster child is not deemed the child of the foster parent “so as to defeat the rights ” of remaindermen. Under no possible circumstance could this language aptly apply to a situation where a foster parent left surviving a natural child and an adopted child. In such a case such a parent would certainly not be one “ dying without heirs ”.
This precautionary addendum to a broadly gauged statute which lays down legal equality between natural children and foster children, therefore, has no logical application to a controversy between two children, such as the present case, where the survival of the respondent Mrs. Conrad alone avoided any application of the effective clause of the precautionary statute, i.e., since she survived, her father did not die without an heir.
The decision of the court in New York Life Ins. & Trust Co. v. Viele (161 N. Y. 11) is one of the main cases on this subject but it must be kept in mind that it was addressed to a controversy which arose before the 1887 statute directing there be legal equality between children was adopted, although the decision itself (1899) came later.
The adoption considered in that case was in 1876, the will executed in 1878 and, as the opinion of Judge O’Brien demonstrates, the statute of 1887 played no part in the decision. It was natural to say, therefore, of such a will executed at such a date that, if the word “ issue ” used by a testator is to be construed to include an adopted child, there must be some affirmative proof of an intention to include such children. This, indeed, is a normal reading of wills in equivocal circumstances relating to the inclusion or exclusion of a class.
But in response to the requirements of a statute such as the Domestic Relations Law (§ 117), the presumption is just the other way. A testator or settlor must know that in the light of New York policy a foster child has exactly the same “ legal relation ” to the parent as a natural child. In the absence of an explicit purpose stated in the will or a trust instrument to exclude such a child, he must be deemed included, whether the word “ heir “ child “ issue ” or other generic term expressing the parent-child relationship is used.
*418 If one looks at the cases in this court which followed upon the enactment of the statute measured against the precautionary addendum prohibiting the use of the adoption device to frustrate remainders, it will be seen the sense in which the statutory purpose was usually read was to treat the rights of an adopted child for all purposes as those of a natural child unless the act of adoption itself and alone cut off a remainder.
Thus, in Matter of Horn (256 N. Y. 294) Judge Chaste observed that the ‘ ‘ only instance ’ ’ in which an adopted child is not deemed the child of the parent is where future estates “ may be cut off” by “ such adoption” and that the precautionary statute was “ aimed at such a possibility ” (p. 297).
This purpose, he added, was also inherent in the reasoning of Matter of Leask (197 N. Y. 193) where the life tenant, by adopting a child; would have frustrated rights considered to be the equivalent of remainders. The adopted child in Matter of Leash was the only child of the life beneficiary; the principal of the trust would otherwise have reverted to testator’s residuary estate.
In Matter of Cohn (297 N. Y. 536, affg. 271 App. Div. 775, affg. 184 Misc. 258, Foley, S.) it was held that an adopted child of a life tenant is entitled to receive an interest given to “ heirs ” of the life tenant, and in Matter of Charles (304 N. Y. 776, affg. 279 App. Div. 741, affg. 200 Misc. 452, Frankeitthaler, g.) it was held that a power given to the life tenant to appoint the principal of the trust, to her “ children ” included the power to appoint it to an adopted child although it was argued in this court that the statutory clause preventing the frustration of remainders by adoption should be applied.
The development of the case law mainly in this direction is examined in the Second Report of the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates (N. Y. Legis. Doc., 1963, No. 19), which led to the adoption of the more explicit language of subdivision 2 of section 117 added by chapter 406 of the Laws of 1963 and made applicable to future instruments.
In Matter of Upjohn (304 N. Y. 366) there was before the court the effect of the adoption of a child by.the beneficiary of a trust under a will, upon whose death before termination of the trust the continuing benefits would pass to “ lawful issue *419 or descendants if any ” of the beneficiary. The adopted child was held entitled to benefits through the foster parent, notwithstanding the precautionary statutory addendum appearing then in section 115 of the Domestic Relations Law.
This result was reached by finding that knowledge by the testator of the adoption would justify the conclusion he intended to treat such a child as issue of the beneficiary, in the background of the general public policy of the State to treat adopted children and natural children alike.
There is, in the opinion of Judge Fuld, a careful analysis of the history and purpose of—and the limitations on—the statutory addendum (304 N. Y. 366, 378, 379, supra). Very similar in both rationale and effect is Matter of Walter (270 N. Y. 201).
The decision in Matter of Rockefeller (Hubbard) (12 N Y 2d 124) turned on a very narrow ground of pleading and it is not decisive, one way or the other, of the problem before us. The holding of the case is that it is immaterial under former section 115 of the Domestic Relations Law what the motive of the foster parent was in adopting children, and hence a pleading of such motivation would be stricken. The opinion developed the thesis that the right of such children to take under the trust depended on the intent of the trust settlor but the question decided was the effect of pleading the foster parent’s intent.
In Matter of Ricks (10 N Y 2d 231) the court was able to say that the statutory addendum had direct and literal application to the facts of that case. Since in the present case the foster parent in no event would have died ‘ ‘ without heirs”, this statutory language accordingly is not controlling.
The order of the Appellate Division should be reversed and the proceeding remitted to the Surrogate for determination consistent with this opinion, with costs to appellant payable from the estate.