Chief Judge Fuld.
In this proceeding to settle a trustee’s account, the question posed is whether former section 114 of the Domestic Relations Law, in effect when the trust was created, compels the adopted children of the settlor’s deceased son to relinquish their father’s share of the trust corpus in favor of the settlor’s natural child and grandchildren.
James and Marian Snowden were married in 1909 and had three children, a son and two daughters. In 1922 they separated and executed a combined separation and trust agreement pursuant to which Mr. Snowden transferred assets yrorth $400,000 to a trust fund for the benefit of his wife and children. The wife received the income of the trust for life. Upon her death, the trust corpus was to be divided per stirpes among the surviving children and the ‘ issue ’ ’— living at her death — of any child who predeceased her. The share of each of Mrs. Snowden’s children who survived her was to be held in trust, with partial distributions at 30 and 35, until the child reached 40 years of age. When he attained that age, he was to receive the balance of the fund remaining. If a child survived his mothef but died before the termination of the trust, his share was to be "paid over ” (1) to such persons as he might direct and appoint by will; (2) in default of appointment, to his "issue then living ”; or (3), if no issue survived, to his “ next of kin then living ”— and such “ next of kin,” the parties subsequently stipulated in a supplemental agreement, “ shall be deemed to mean 'next of kin ’ as determined by the intestate laws of the State of New York”. If no children, or issue of children, outlived Mrs. Snowden, then, upon her death, the trust was to be paid over to Mr. Snowden or to his estate.
*326 Mr. Snowden, the settlor, died in 1930, his wife in 1969, and it is her death which gives rise to the present proceeding to settle the trust account. One daughter had died in 1943, survived by three natural children, the son in 1964, survived by fwo adopted children, and the other daughter, over the age of 40 and childless, outlived her mother. The respondents — the surviving daughter and the three children of the daughter who had died — rely upon former section 114 of the Domestic Relations Law to defeat the claim of the adopted children to their deceased father’s share of the trust principal.
In 1922, section 114 provided that “ foster parent or parents and the person adopted sustain toward éach other the legal relation of parent and child,” including the right of inheritance from each other.[1] The statute further recited, however, that, ‘ ‘ as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen.”[2]
The respondents maintain that, in the provision for distribution of the trust corpus among the children surviving their mother and the “ issue ” of any predeceased child, the word, “ issue,” by operation of section 114, does not include adopted children; accordingly, they continue, the fund should be divided into two parts and distributed per stirpes to the surviving daughter and the children of the deceased daughter. On the other hand, the appellants, the adopted children, contend that, sinée the settlor left his son and daughters free to transfer their respective shares of the corpus to- persons other than his own descendants — that is, individuals outside of the bloodline — he evidenced an intention to include adopted children.
*327 The court at Special Term decided in favor of the respondents, and a closely divided Appellate Division affirmed (38 A D 2d 926). The dissenting justices, noting that the only purpose of former section 114 was to preserve the intent of the creator of the trust to “ stay within [his own] bloodline,” reached the conclusion — with which we agree — that a reading of the trust agreement demonstrates that the settlor did not desire to exclude adopted children.
Since 1887, our adoption statute (L. 1887, ch. 703; cf. L. 1873, ch. 830) has embodied “ the fundamental social concept that the relationship of parent and child, with all the personal property rights incident to it, may be established, independently of blood ties, by operation of law”. (Matter of Upjohn, 304 N. Y. 366, 373.) The “ precautionary addendum ” contained in section 114 was an exception to the ‘‘ broad pattern of remedial legislation” enacted to effectuate that purpose and “must be strictly construed in order that the major policy underlying legislation itself is not defeated.” (Matter of Charles, 200 Misc. 452, 460-461 [per Frankenthaler, S.], affd. 279 App. Div. 741, affd. 304 N. Y. 776.) It did not apply, this court said in Matter of Rockefeller (Hubbard) (12 N Y 2d 124, 134), if it “ affirmatively ” appeared from the context of the trust instrument or from extraneous facts “ that the grantor intended to include adopted children * * *, for they are not required to establish that they specifically were contemplated as objects of affection and bounty by the testator (Matter of Charles, 304 N. Y. 776, Matter of Ward [9 N Y 2d 722]).” (See, also, Matter of Upjohn, 304 N. Y. 366, 375, supra.)
In point of fact, the precautionary addendum was merely designed to prevent ‘ ‘ the perpetration of fraud on the rights of remaindermen ‘ through an adoption for the very purpose of cutting out a remainder.’” (Matter of Upjohn, 304 N. Y. 366, 378, supra.) That the danger of such fraud is minimal is confirmed by the Legislature’s decision, reached in 1963, to delete the precautionary addendum and to provide expressly that adopted children are to be included in the generic terms “issue” and the like, “ [u]nless the will or other instrument specifically provides to the contrary ” (former Decedent Estate Law, § 49, L. 1963, ch. 310; see, also, EPTL 2-1.3). The legislative purpose sought to be achieved, the Note to chapter 406 of *328 the Laws of 1963 recites, is to “ carry out a public policy of placing the adopted child so far as possible within the bloodlines of his new family for inheritance purposes ” (Laws of New York, 1963, vol. 1, p. 1788 n.; see, also, N. Y. Legis. Doc., 1963, No. 19, Appendix F, p. 175).
Even prior to the passage of this statute, however, adopted children were permitted to defeat the rights of contingent remaindermen where the grantor (1) knew and approved of the adoption of a child by a life beneficiary (Matter of Upjohn, 304 N. Y. 366, supra); (2) advocated adoption' in his family circle and evinced a desire to treat all his children alike (Matter of Ward, 9 N Y 2d 722, supra); or (3) expressly provided that the trust principal might be divided among those not his descendants or within his bloodline (Matter of Charles, 304 N. Y. 776, affg. 279 App. Div. 741, affg. 200 Misc. 452, supra).
The Charles case (304 N. Y. 776, affg. 279 App. Div. 741, affg. 200 Misc. 452, supra) is not unlike the present. The testatrix had set up a trust for life for the benefit of her unmarried daughter, authorizing her, under a limited power of appointment by will, to distribute the corpus to, among others, her children, the issue of deceased children or her husband. The daughter died at the age of 73, still unmarried, survived by two adopted children and a niece, among whom she distributed the trust principal. In a suit brought by the niece — who, in default of appointment, would have been the sole remainderman — to disqualify the adopted children from sharing in the estate, we upheld the decision of the courts below in favor of those children. It is clear — as Surrogate Frattkenthaler put it (200 Misc., at p. 462) — that, since the daughter was authorized to appoint her husband, she was, by that token, “ empowered to defeat completely ’’ the interest of any remainderman “by an act not involving a child or children. The remainders were thus dependent not upon death without children but upon the whim of [the] donee in making her selection. As under the terms of the will she could have arbitrarily cut off the interest of any one or all of the takers in default in the absence of children, the interposition between the remaindermen and the property of that broad power of diversion renders those interests contingent upon an event other than that provided in the statutory exception.” *329 In affirming that disposition, it was onr conclusion that the testatrix must have had in mind the fact that her daughter might adopt children.
In the case now before us, the power of appointment given to each child was much broader; each donee was empowered to appoint any one he chose. If he failed to do so, his share was to go to his ‘ ‘ issue then living ’ ’. Since the settlor had authorized his child to appoint those not of his blood, it is difficult to believe that he did not intend adopted, as well as natural, children to be included in the word, “ issue,” wherever used in the trust instrument. Moreover, if the child failed to exercise his power of appointment and died without issue, survived, however, by a spouse as his “next of kin”, the latter, a stranger to the settlor’s blood, would have taken to the exclusion of the settlor’s natural children or their issue (former Decedent Estate Law, §§ 81, 83). In any of these events, the remaindermen would have been in precisely the same position as they now are. It is not material that these possibilities would arise only in the case of a child who survived his mother and died before the termination of the trust. As the court declared in the Rockefeller case (12 N Y 2d 124,134, supra), what is important and operative is the “ intent of the settlor ”, Having permitted the child in the circumstances posited to appoint any one he selected, and having contemplated that, in default of appointment or of natural issue, persons not related to him by blood might share in the trust, the settlor must be deemed, by his lack of concern for bloodlines, to have had Tn mind that adopted children might likewise take. (See, e.g., Matter of Lynde, 28 Misc 2d 174,176.)[3]
The cases relied upon by the respondents (e.g., Matter of Carll, 27 N Y 2d 917; Matter of Washburn, 17 N Y 2d 895) are clearly distinguishable; they involved wills in which the trust remainder was explicitly limited to the grantor’s ‘ ‘ bloodlines ’ ’— that is, to his children and their issue — and the life tenants *330 had no power of appointment of any kind. Quite obviously, in such cases, no basis existed for a finding that the testator intended to include adopted children.
Before concluding, it should be noted that we do not adopt the additional ground for reversal advanced by the appellants and approved by the Appellate Division dissenters, namely, that the rights of the respondents “ are not defeated, but merely kept to their proper share ” (38 A D 2d, at p. 927). Since it is the intent of the settlor which controls, it matters not whether the remaindermen’s rights were completely or only partially defeated. Former section 114 of the Domestic Relations Law made no distinction between the two situations.
The order of the Appellate Division should be reversed and the matter remitted to the Supreme Court, New York County, for a determination in accordance with this opinion, with costs, payable out of the estate, to all parties ^ppQ^ring separately and filing separate briefs.
Judges Burke, Scileppj, Bergan, Brbitel, Jasen and Gibson concur.
Order reversed and the matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein, with costs to all parties appearing separately and filing separate briefs payable out of the trust.

. The word “foster” is'no longer used in connection with adoption; the statute speaks of “adoptive” parents and children. (Domestic Relations Law, § 117 see, also, EPTL 2-1.3.)

. Section 114 was renumbered 115 in 1938 (L. 1938, ch. 606) and 117 in 1961 (L. 1961, ch. 147). The quoted paragraph, usually called the “precautionary addendum ”, was deleted from section 117 in 1963 (L. 1963, ch. 406, eff. March 1,1964) and applies only to instruments executed prior to March 1, 1964. (See, also, former Decedent Estate Law, § 49 [L. 1963, ch. 310, eff. March 1, 1964]; EPTL 2-1.3.)

. The respondents make the point that the most likely purpose of the provisions (above referred to) was to assure that a child who survived his mother but died before 40 would have the same power to dispose of his share as children who were alive at the termination of the trust. This seems highly conjectural. At best, such provisions served but an additional purpose and do not negate or alter the settlor’s intention with respect to inheritance by those not of his blood.