(No. 51449.—

ROBERT FREEMAN FORD *et al.*, Appellees, v. JUDITH FORD NEWMAN *et al.* (John Robert Ford *et al.*, Appellants).

*Opinion filed October 19, 1979.—Rehearing denied November 30, 1979.*

CLARK, J., dissenting.

W. M. Pinney, Jr., of Husted, Pinney, Ogg & Caccia, of San Francisco, and Edward J. Kionka, of Columbia, for appellants.

Thompson & Strong, of Pontiac (R. D. Thompson and Kenneth L. Strong, of counsel) and Sidley & Austin, of Chicago (James E. S. Baker, Loren E. Juhl, Robert A. Malstrom, and Henry L. Mason III, of counsel), for appellees.

Richard O. Erdmann, of Follmer, West, Erdmann & Clem, of Champaign, and Nicholas Stevenson, of Mandel, Lipton & Stevenson, Ltd., of Chicago, for *amicus curiae* Child Care Association of Illinois.

MR. JUSTICE MORAN delivered the opinion of the court:

This case involves a determination of the beneficiaries under a trust in which the plaintiffs, Robert Freeman Ford and the Bank of Pontiac, are cotrustees. The appellants-defendants (defendants) are the two adopted children of Tod Ford III, a named trust beneficiary, now deceased.

On July 16, 1969, the plaintiffs filed a complaint which averred, in part, that the defendants have no interest in the corpus or income of the trust. The circuit court of Livingston County entered summary judgment for the plaintiffs. The appellate court affirmed, with one justice dissenting. (64 Ill. App. 3d 528.) We granted the defendants leave to appeal.

On December 31, 1941, Lillian Ford Timken executed

338

an irrevocable *inter vivos* trust in New York, the place of her domicile. The corpus of the trust consisted, principally, of Illinois realty. The substance of the trust provision which is pertinent to this appeal follows. One-half of the income from the trust was to be paid to the settlor's two sons, Robert Freeman Ford and Tod Ford III, during their respective lives, and, upon the death of either, his share of the income was to be paid "to his lawful issue him surviving," during their respective lives. If either son died "without leaving lawful issue him surviving," his share of the income was to be paid to the other son or "to [the other son's] lawful issue him surviving," during their respective lives. The trust also specifically provided for "any issue of either of said beneficiaries [Tod Ford III and Robert Ford] not now in being." The settlor appointed herself and her two sons as trustees. Both sons lived in California at the time of execution of the trust, and that is where the defendants were adopted.

The circuit court found that the settlor's actual intent was to exclude adopted children. The appellate court affirmed the judgment, finding that Illinois law was applicable and that, under Illinois law, defendants were not included as beneficiaries.

Defendants urge that the settlor's actual intent was to include adopted children in the term "lawful issue." While defendants raise other arguments, we find, in fact, that resolution of the case can be made on the determination of the settlor's actual intent.

Our object is to ascertain and give effect to the intention of the settlor. The evidence that we may consider to determine this intent is governed by the law of the forum, Illinois. (See Restatement (Second) of Conflict of Laws sec. 138 (1971); *People v. Saiken* (1971), 49 Ill. 2d 504, 509, *cert. denied* (1972), 405 U.S. 1066, 31 L. Ed. 2d 796, 92 S. Ct. 1499; *People v. Kirkpatrick* (1953), 413 Ill. 595, 597.) Under Illinois law, intent is to be

ascertained, if possible, from the language of the instrument itself. *Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124, 127; *Erwin v. Kruse* (1959), 17 Ill. 2d 364, 370; *Storkan v. Ziska* (1950), 406 Ill. 259, 263.

In the case at bar, the settlor did not expressly refer to adoptees in the instrument. She did, however, with the aid of counsel, utilize the term "lawful issue," to refer to the issue of her two sons. We must examine how, on the date of execution, the law defined "lawful issue" as the settlor employed that term.

The law which we must examine is that under which the settlor considered the trust provisions. She did not expressly designate which State's law was to apply. Absent such an express designation, it is only reasonable to conclude that she expected that the laws of either New York—where she had long been domiciled and where the instrument was drawn and executed—or the laws of Illinois—the situs of almost all the realty which comprised the corpus of the trust—to apply. Examination of the laws in effect in 1941 in these two States reveals that a like result is reached under either.

New York had the following statutes in effect at the time of execution of the trust:

> "1. 'Foster parent' shall mean a person adopting and 'foster child' shall mean a person adopted." (N.Y. Dom. Rel., art. VII, sec. 109(1), eff. Feb. 17, 1941 (Supp. 1942).)

And, in pertinent part,

> "As respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the foster child is not deemed the child of the foster parent so as to defeat the rights of remaindermen." (N.Y. Dom. Rel., art. VII, sec. 115, eff. Apr. 13, 1040 (Supp. 1942).)

See *New York Life Insurance & Trust Co. v. Viele* (1899), 161 N.Y. 11, 55 N.E. 311; *In re Accounting of Leask*

(1910), 197 N.Y. 193, 90 N.E. 652.

At the same time, the following statute was in effect in Illinois:

> "A child lawfully adopted is deemed a descendant of the adopting parent for purposes of inheritance, except that the adopted child shall not take property from the lineal or collateral kindred of the adopting parent per stirpes or property expressly limited to the body of the adopting parent." (Ill. Rev. Stat. 1941, ch. 3, par. 165.)

See *Miller v. Wick* (1924), 311 Ill. 269.

Under the law of both States, adopted children were deemed not to be included as "lawful issue" of the settlor's sons within the trust provision in this case. Thus, the legal meaning attributed to the language used served to exclude adoptees, absent other evidence of a contrary intention.

Our careful examination of the record reveals no such evidence of a contrary intention on the part of the settlor. After first looking to the language of the trust instrument itself, we may consider the surrounding circumstances at the time of execution of the trust. (*Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124, 127.) The record here discloses that the defendants were not adopted until more than a year after the date of the instrument. The defendants allege, however, that the settlor knew that the adoptive parents, Tod and his wife, were incapable of having natural children. In support thereof, defendants correctly point out that Tod and his wife were 36 and 38 years old, respectively, at the time of the trust's execution and had been childless since their marriage in 1929. But any knowledge by the settlor of their child-bearing capabilities at the time in question is not substantiated by the record. In fact, in a deposition taken in preparation for this case, Tod's wife stated that she herself did not know that she was incapable of having natural children until sometime after she and Tod had

adopted their first child, which, as stated, did not occur until more than a year after the settlor executed the trust.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE CLARK, dissenting:

I dissent from the majority opinion. The opinion not only leaves ambiguous which State's law it applies, it also makes the erroneous statement that Illinois and New York law are the same. It is my opinion that New York law applies, and that under the law of that State, the adopted grandchildren of the settlor would be considered to be beneficiaries of the trust.

The majority opinion states: "Our object is to ascertain and give effect to the intention of the settlor. The evidence that we may consider to determine this intent is governed by the law of the forum, Illinois." (77 Ill. 2d at 338.) Shortly thereafter, however, the majority opinion states that the law to be examined to define "lawful issue" "is that under which the settlor considered the trust provisions," which would be *either* New York or Illinois. Then the majority opinion does not make a decision but states that "[e]xamination of the laws in effect in 1941 in these two States reveals that a like result is reached under either." The majority then proceeds to apply New York law erroneously, and reaches a conclusion which is not only unsupported by fact, law or public . policy, but one which is unfair.

If the majority had truly endeavored to discern the settlor's intent, it would have applied the law of New York alone. That is the State where the settlor was domiciled. It is where the trust instrument was prepared and executed and, as Mr. Justice Craven said in his thoughful dissent in the appellate court: "It appears obvious that the law of the settlor's domicile is likely to be the most helpful since it is

the law with which she (and her scrivener) was the best acquainted." (64 Ill. App. 3d 528, 535.) Moreover, I agree with the majority and dissenting opinions in the appellate court that section 277 of the Restatement (Second) of Conflict of Laws (1971), which was not mentioned by the majority herein, is helpful as a guide. But I do not think that it is determinative. Section 277 states that as to trusts involving interests in land the law of the situs of the land should apply. However, the comment to subsection (2) provides:

"The purpose of a rule of construction is to effectuate the intention of the settlor or testator, or what would most probably have been his intention if he had thought about the matter. Hence the courts of the situs, and other courts as well, should apply the rules of construction which the settlor or testator *would most probably have wished* to be applied." (Emphasis added.) (Restatement (Second) of Conflict of Laws sec. 277, comment to subsection (2) (1971).)

See also section 268(2)(b).) It seems to me that we cannot indulge in the speculation that the settlor most probably would have wished to exclude her adopted grandchildren from becoming beneficiaries. I think if we are to make an inference about the settlor's intention we should attribute to the settlor the attitude that she wished to treat each of her grandchildren alike, and not that she would discriminate among them on the basis of who was adopted and who was not. That inference is the fair and logical one to make, in the absence of any evidence indicating to the contrary. Application of New York law more closely carries out what it is fair to assume was the settlor's intent.

The New York adoption statute passed in 1887 "unequivocally ordains that 'the foster parents or parent and the foster child shall sustain toward each other the legal relation of parent and child and shall have all the

rights and be subject to all the duties of that relation including the rights of inheritance from each other.' " (*In re Will of Upjohn* (1952), 304 N.Y. 366, 373, 107 N.E.2d 492, 494, citing N.Y. Dom. Rel. (1887), art. VII, sec. 115 [Supp. 1942]. This section, although renumbered in 1938 and 1961, remained unchanged from 1887 to 1963. The statute contains the additional paragraph quoted by the majority:

> "As respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the foster child is not deemed the child of the foster parent so as to defeat the rights of remaindermen." (N.Y. Dom. Rel., art. VII, sec. 115, eff. Apr. 9, 1938.)

However, this paragraph has been termed a "precautionary addendum" to the Domestic Relations Law (*In re Bankers Trust Co.* (1972), 31 N.Y.2d 322, 326 n.2, 327, 291 N.E.2d 137, 139 & n.2) and has been given extremely limited effect by the New York courts. The precautionary addendum was finally deleted in 1963 and applies only to instruments executed prior to March 1, 1964. (*In re Bankers Trust Co.* (1972), 31 N.Y.2d 322, 326 n.2, 291 N.E.2d 137, 139 n.2, 338 N.Y.S.2d 895, 897 n.2.) In *In re Will of Upjohn* the issue was whether a testator intended to include the adopted daughter of his niece as a beneficiary under the terms of a testamentary trust. The language in the instrument indicated that if the niece predeceased the testator, the income was to be paid to her "lawful issue" or "descendants." The court stated that the rule of construction in New York was that, in the absence of any indication of the testator's intent, it will be assumed that the testator did not envisage adopted children taking under the limitation. Where, however, the testator's intent to include an adopted child is clear, the limitation will be construed to comply with the intention. (*In re Will of Upjohn* (1952), 304 N.Y. 366, 375, 107

N.E.2d 492, 496.) The court found of surpassing signifi-
cance the fact that the testator knew of the adoption. It
stated, "Far more often than not, it is recognized, a
testator 'accepts the situation and relationship which the
adopting parents have created.' [Citation.]" (304 N.Y.
366, 375, 107 N.E.2d 492, 496.) The same factual
situation is present herein. Finally, the court in *Upjohn*
considered the applicability of the precautionary adden-
dum to the facts presented. The court stated that section
115 was designed to prevent the perpetration of fraud on
the rights of remaindermen by an adoption "for the very
purpose of cutting out a remainder." (304 N.Y. 366,
378, 107 N.E.2d 492, 498.) "The danger of fraud arises
where the adoption takes place without the testator's
knowledge, especially when it occurs after his death.
That was, we observe, the situation in *Matter of Leask,*
197 N.Y. 193, and is one circumstance that thoroughly
differentiates that case from the one under considera-
tion." (304 N.Y. 366, 379, 107 N.E.2d 492, 498.) *In re
Accounting of Leask,* cited by the majority, is also dis-
tinguishable from the instant case for the same reason.

Another New York case, *In re Estate of Park* (1965),
15 N.Y.2d 413, 207 N.E.2d 859, 260 N.Y.S.2d 169, went
even further in supporting equal property rights for
adopted children. There the issue was whether the adopted
child and the natural child of the deceased grandson of the
testator were to be treated alike. The testator died in
1909. He had created testamentary trusts for each of his
surviving children, the income payable to a child for life,
and as each child died, "the principal of the trust fund of
such child *** shall be distributed among his issue him or
her surviving in equal shares." (15 N.Y.2d 413, 416, 207
N.E.2d 859, 859, 260 N.Y.S.2d 169, 170.) The testator's
daughter, a trust beneficiary, died in 1961. Her son had
predeceased her. The son had a natural daughter and an
adopted son. The testamentary trustee sought an account-

ing and construction of the will in order to decide whether each child would be entitled to a share of the principal of the trust or whether only the natural child could receive the principal.

The court departed from the former rule of construction which had previously prevailed in New York. It stated that, in light of New York policy embodied in section 117 (formerly section 115) of the Domestic Relations Law that an adopted child has the same legal relation to the parent as a natural child, the presumption arises that unless an intent to the contrary is expressed in the will or trust instrument an adopted child "must be deemed included, whether the word 'heir', 'child', 'issue' or other generic term" is used. (15 N.Y.2d 413, 417, 207 N.E.2d 859, 861, 260 N.Y.S.2d 169, 171.) The application of the precautionary addendum was limited by the court to cases where "the adoption itself and alone cut off a remainder." (15 N.Y.2d 413, 418, 207 N.E.2d 859, 861, 260 N.Y.S.2d 169, 171.) It has been stated that the creation of the presumption in *In re Estate of Park* that adopted children be treated as natural children unless a contrary intent is expressed "appears to have overruled" *In re Accounting of Leask* (1910), 197 N.Y. 193, 90 N.E. 652, and even *In re Will of Upjohn* (1952), 304 N.Y. 366, 107 N.E.2d 492, as far as the presumption is concerned. (*In re Estate of Grace* (1965), 46 Misc. 2d 878, 879, 261 N.Y.S.2d 236, 238.) Also, *New York Life Insurance & Trust Co. v. Viele* (1899), 161 N.Y. 11, 55 N.E. 311, does not control because it was decided before the 1887 statute specifying that adopted children are to be treated as equal to natural children. (*In re Estate of Grace* (1965), 46 Misc. 2d 878, 879, 261 N.Y.S.2d 236, 238.) *Leask* and *Viele* are the only two New York cases cited by the majority herein.

I think therefore that it is abundantly clear that the majority has misstated the law of New York, as it existed in New York in 1941 and as it exists now. The

presumption was created in *In re Estate of Park* where the court construed a testamentary trust of a testator who died in 1909. The court held that in the absence of an explicit purpose in the will or trust instrument to exclude a child, he must be deemed included. (15 N.Y.2d 413, 417, 207 N.E.2d 859, 860-61, 260 N.Y.S.2d 169, 171.) No reference to that presumption is made in the majority opinion. The operation of the presumption would require a different result than that which is reached under Illinois law; it would require that the defendants be considered beneficiaries under the trust agreement. I remain convinced that the result reached by applying New York law is the fair and correct one, and that the majority opinion is wrong.