*70 OPINION OF THE COURT
Kaye, J.
This appeal calls upon us to determine whether the statutory "precautionary addendum” contained in former section 114 of the Domestic Relations Law[1] defeats the inheritance of an adopted child. We hold that it does not.
Jonathan T. Gardiner died on August 6, 1933, leaving a will executed January 25, 1932 that was admitted to probate in Suffolk County on September 30, 1933. Jonathan never married and had no children. The will included two testamentary trusts, one for each of his grandnieces, Isabel Gardiner (Mairs) and Frances Delaney Gardiner (Collins). Each grandniece was given the unrestricted right at death to appoint the corpus of the trust to whomever she might select. A third trust was set up in article fourth of Jonathan’s will, directing that the remainder of his estate was to be held in trust for Winthrop Gardiner, Jr. — Jonathan’s grandnephew — with the income payable to him when he reached 21 years of age. Upon Winthrop’s death, article fourth provided that the trust was to cease, with the principal going to Winthrop’s "oldest living son” or, if he left no son, then to his appointee from the class of "male relative[s] of mine bearing the name Gardiner.”
The pertinent language is as follows: "in the event that he [Winthrop Gardiner, Jr.] shall leave no son him surviving, I give, devise and bequeath the same to such male relative of mine bearing the name Gardiner as my said grandnephew, Winthrop Gardiner, Jr., shall appoint in and by his Last Will and Testament, and, in the event that my said grandnephew, Winthrop Gardiner, Jr., shall die without leaving a son him surviving, and shall fail to exercise such power of appointment, then, and in that case, I direct that my Executor and Trustee sell, as soon after the death of my said grandnephew, Winthrop Gardiner, Jr., as practicable, all of my real property as is included in my said residuary estate, or such portion or *71 portions thereof as shall not theretofore have been sold, in such manner and for such prices as in the judgment of my said Executor and Trustee shall be to the best interests of my estate, provided, however, that such sale be made to, and only to, some male relative of mine bearing the surname 'Gardiner’, the proceeds of the sale of which, together with the remainder of my said residuary estate, I hereby give and bequeath to my aforesaid grandnieces, Isabel Gardiner and Frances Delaney Gardiner, share and share alike, or to their survivor, and in the event that neither of my said grandnieces should survive my said grandnephew, then I give and bequeath aforesaid proceeds, together with said remainder of my said residuary estate, to such persons who would at that time inherit the same under the Laws of the State of New York if my said grandnephew had died intestate the owner thereof.” The executor and trustee were, in article sixth of the will, given authority to sell any real estate owned by Jonathan "at such prices, at such times, and on such terms and conditions as my said Executor and Trustee may deem expedient and desirable, and to the best interests of my estate.”
Winthrop died October 16, 1980, leaving a will that had been executed on February 12, 1975 and was admitted to probate in Florida on January 13, 1981. Winthrop was survived by his adopted son, Olney Mairs Gardiner.
Olney actually had been born to Winthrop’s sister Isabel, and thus was Winthrop’s nephew and godson. He was born June 26, 1942, baptized "Olney Blanchard Gardiner Mairs” on September 25, 1949, and adopted on August 14, 1974 by Winthrop and his wife Beth, pursuant to an order of Family Court, Suffolk County, that also changed his name. From the date of the adoption Olney has been known as Olney Mairs Gardiner. Six months after the adoption, Winthrop executed his will, in which he declared that Olney was both his "oldest living son” and his appointee in accordance with the power of appointment contained in Jonathan’s will. The relevant paragraph reads: "Under the terms of Paragraph Fourth appearing on Page 2 of the Last Will and Testament of my Granduncle, Jonathan t. gardiner, which will was executed on January 25, 1932 * * * a trust was created for my benefit and the principal of which upon my death was to pass to my oldest living son. I hereby state that my only son is olney mairs gardiner, of 4935 MaConnel Avenue, Los Angeles, California 90066. To the extent that may be necessary for me to exercise the power of appointment in said Paragraph Fourth of said *72 Will, then I do exercise the same and appoint the principal remaining to my said son.”
The Bank of New York, as trustee, instituted this proceeding in Surrogate’s Court, Suffolk County, seeking a construction of article fourth of Jonathan’s will and a settlement of its account. The Bank and Olney sought summary judgment awarding Olney the residuary estate. Frances Gardiner Collins and the guardian ad litem, representing the class of males with the surname Gardiner, cross-moved for summary judgment and alternatively for discovery on the motives behind Winthrop’s adoption of Olney. They asserted the following grounds for summary judgment: first, that Olney was precluded from inheritance as Winthrop’s adopted son by virtue of the precautionary addendum; second, that Olney was also precluded from inheritance as an appointee through his mother by virtue of his adoption by Winthrop; and third, that the adoption was a fraudulent scheme. Frances further challenged the constitutionality of the remainder clause insofar as it limited the power to sell the property to males.
The Surrogate granted summary judgment in favor of the trustee and Olney, finding the precautionary addendum inapplicable because the interest of the remaindermen could be defeated not only by adoption but also by appointment. The Appellate Division upheld the grant of summary judgment on a different rationale, concluding that the precautionary addendum applied so that Olney could not take as Winthrop’s son, but he could take as Winthrop’s appointee. The Appellate Division granted the guardian ad litem, Frances and Olney leave to appeal to this court on the certified question, "Was the order of this court dated December 30, 1985, properly made?”
We conclude that the precautionary addendum did not preclude Olney’s inheritance as the "oldest living son” of Winthrop.
The issue may be simply posed. On the date of Jonathan Gardiner’s death, the Domestic Relations Law provided that an adopted child and foster parent had the legal relation of parent and child, and all the rights and duties of the relationship, including inheritance but, "as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen.” *73 (Domestic. Relations Law former § 114, L 1931, ch 562.)[2] If Olney’s taking by adoption alone defeats the rights of remaindermen, the precautionary addendum prohibits this inheritance; if it does not, he may inherit as Winthrop’s son. For the reasons that follow, we conclude that he may inherit as Winthrop’s son.
For nearly a century, an unbroken fundamental concept and policy of this State has been that adopted children stand equal with biological children within their adoptive families, with all incidental property rights (L 1887, ch 703; Matter of Snowden, 31 NY2d 322, 327; Matter of Upjohn, 304 NY 366, 373; see also, Matter of Best, 66 NY2d 151). Adopted children are in the line of descent "through the command of the statute, the same as if that line had been established by nature” (Matter of Cook, 187 NY 253, 261), and wills are to be construed in harmony with this policy (Matter of Upjohn, 304 NY 366, 374, supra). The precautionary addendum, specifying that an adopted person is not deemed the child of the foster parent, in principle offends this long-standing policy. While the Legislature promulgated both the statutory language favoring adopted children as full members of their adoptive families and the precautionary addendum, the motive for the latter is plain: the Legislature feared that where the passing of property was dependent on a parent dying without heirs or children, it would have been a simple matter to perpetrate a fraud on the rights of the remaindermen through the device of adoption (see, Matter of Upjohn, 304 NY 366, 378, supra). In 1963, the Legislature abandoned even this narrow exception to the strong policy favoring the full equality of adopted children (see, Matter of Snowden, 31 NY2d 322, 327, supra). Where applicability of the precautionary addendum must still be considered, however — specifically with respect to wills of persons dying before March 1, 1964 — courts have applied it narrowly, limiting its operation to facts falling strictly and necessarily within its terms. More particularly, the precautionary addendum has been applied only where the act of adoption cuts off a remainder interest that would have followed but for the adoption.
In Matter of Park (15 NY2d 413), for example, we concluded that the precautionary addendum did not prevent an adopted *74 child, from sharing a trust remainder equally with a biological child because, even if there had been no adoption, the biological child still would have cut off the remainder; the precautionary addendum, we held there, should be limited to cases where "the act of adoption itself and alone cut off a remainder.” (Id., at p 418.) Similarly, the precautionary addendum has not precluded an adopted child’s inheritance in cases where the adoption simply has brought a child within an existing class (see, Matter of Silberman, 23 NY2d 98; Matter of Johnson, 17 NY2d 448). Further, where the remainder interest has been dependent not on the death of the donee without heirs but on the whim of the donee in exercising a power of appointment among a class not limited to his heirs, the precautionary addendum has been held not to preclude inheritance by an adopted child (see, Matter of Snowden, 31 NY2d 322, supra; Matter of Charles, 200 Misc 452, affd 279 App Div 741, affd 304 NY 776).
Here, the interest of the remaindermen was subject not only to the contingency of Winthrop’s death without a son, but also to the contingency of Winthrop’s failure to exercise his power of appointment on behalf of male relatives bearing the name Gardiner; the passing of Jonathan’s property outside the remaindermen was not solely dependent upon “the foster parent dying without heirs” (Domestic Relations Law former § 114). Thus, even without an adoption, under Jonathan’s will the interest of the remainderman could have been defeated by appointment to anyone within a class of persons that included Olney. It is clear that Winthrop’s adoption of Olney did not itself and alone operate to defeat the interest of the remaindermen, and the precautionary addendum cannot preclude Olney’s inheritance as Winthrop’s son.
We reject two further arguments tendered by appellants: that Jonathan’s will expressly excluded adopted children, and that he evinced the intent to restrict the passing of his property to his male bloodline. The will makes no particular reference to adopted children, and thus could hardly be said to have excluded them expressly. Moreover, at the time of Jonathan’s death the law provided that the rights of an adopted child included inheritance, and Jonathan’s will contemplated that his property could pass by intestacy.
Nor do we find within the four corners of the will (Matter of Fabbri, 2 NY2d 236, 239-240) an intent that the property should pass only to male relatives in Jonathan’s *75 bloodline. The real property left to Winthrop in the will could have been sold by the executor or trustee, in its discretion, any time before Winthrop’s death. (Indeed, it appears that Gardiner’s Island was sold by the trustee to a female relative in 1937, shortly after Jonathan’s death.) If Winthrop was not survived by a son, if he failed to exercise the power, and if the grandnieces did not survive Winthrop, the will expressly contemplated that the property would pass by intestacy, article fourth, further, distinguishes between male relatives "bearing the name Gardiner” (who Winthrop could appoint, pursuant to his power) and male relatives "bearing the surname Gardiner” (to whom sales of the real property could be made) (emphasis added). Applying the ordinary meaning of the words used by the testator, it is plain that any male relative — whether descending through the male or female line —who carried forward the name Gardiner was within the class subject to appointment by Winthrop.
The dissent concludes that it was not within the intention of Jonathan Gardiner that a male relative not a Gardiner by birth could by mere change of name qualify himself to take the remainder to the exclusion of the remainderman (dissenting opn, at pp 84-85). But more was involved here than a mere change of name: by law Olney had become Winthrop’s son, and his issue Jonathan’s descendants. The intent expressed by the testator was to keep the property within the family (not excluding adopted children), to leave the remainder to a male relative and above all to perpetuate the family name Gardiner. Olney Mairs Gardiner, meeting these criteria, is thus entitled to the remainder of the trust as the son of Winthrop Gardiner, Jr.
Because we conclude that the precautionary addendum was not a bar to Olney’s inheritance as Winthrop’s son, we have no need to consider the alternative analysis of the Appellate Division — that Olney inherited as Winthrop’s appointee pursuant to the power of appointment — by which the same result was reached.
Finally, Frances Gardiner Collins and the guardian ad litem have raised no issue of fact with respect to the claim that further discovery is warranted. The matter said to warrant further discovery is that the adoption and exercise of the power were an exchange for a promise that Olney would care for Winthrop’s wife Beth. Even if relevant, this assertion presents no triable issue in that Beth died even before Win *76 throp executed his will. Moreover, in view of our disposition, we do not reach Frances’ challenge to the constitutionality of the gender limitation on sales of the property.
Accordingly, the order of the Appellate Division should be affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate. The certified question is answered in the affirmative. The appeal by Olney Mairs Gardiner is dismissed, without costs, on the ground that he is not a party aggrieved by the order appealed from (CPLR 5511).

.That section provides as follows: "The foster parent or parents and the person adopted sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation, including the right of inheritance from each other * * * but as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen. ” (Domestic Relations Law former § 114, L 1931, ch 562; the italicized language is known as the precautionary addendum.)

.While the precautionary addendum was repealed effective March 1, 1964 (L 1963, ch 406), it nonetheless applies to the wills of persons dying before the repeal became effective (Domestic Relations Law § 117 [3]).